ABBOTT GIN COMPANY v. MISSOURI, KANSAS & TEXAS RAILWAY
COMPANY OF TEXAS ET AL.

Decided October 23, 1909.

**1.—Charge—Damages—Submission of Grounds for Recovery—Practice.**

Where plaintiff, in a suit for the value of cotton seed alleged to have been destroyed by fire by the negligence of a railroad company, relied upon two grounds for recovery, the giving of a special charge requested by the defendant wherein only one of said grounds was submitted to the jury, was not cause for reversal in the absence of a request by special charge by plaintiff to submit the other ground also.

**2.—Carrier—Delivery to—Evidence.**

In a suit against a railroad company for value of cotton seed destroyed by fire while stored in a house on the defendant's right of way, evidence considered and held insufficient to support a contention that said cotton seed had been delivered to or accepted by the defendant for immediate shipment. Hence, the burden of proving negligence on the part of the defendant was properly placed upon the plaintiff by the court's charge.

**3.—Carrier—Destruction of Property by Fire—Contributory Negligence of
    Shipper.**

Where it appeared from the evidence that plaintiff stored his cotton seed in a house on defendant's right of way near defendant's platform on which bales of cotton had been placed for shipment, and said cotton seed was thereafter destroyed by fire alleged to have been caused by sparks from defendant's engine, the court properly submitted to the jury the issue of contributory negligence interposed by defendant.

Error from the District Court of Hill County. Tried below before Hon. W. C. Wear.

*Morrow & Smithdeal,* for plaintiff in error.

*Coke, Miller & Coke* and *Ramsey & Odell,* for defendants in error.

RAINEY, CHIEF JUSTICE.—This suit was instituted by plaintiff in error against defendant in error to recover the sum of $1020, the value of sixty-eight tons of cotton seed owned by plaintiff and which stood on defendant's right of way, alleged to have been burned by negligently permitting sparks of fire to escape from defendant's engine. The defendant plead a general denial and contributory negligence of plaintiff in placing said cotton seed on defendant's right of way exposed to fire. A trial before a jury resulted in a verdict and judgment for defendant.

Plaintiff in error complains of the giving of a special charge requested by defendant in error, to wit: "You are instructed that the burden is upon the plaintiff to show by a preponderance of the evidence that the fire which destroyed the property in controversy was caused from a spark or sparks emitted or discharged from an engine of the defendant railway company; and unless you believe from the preponderance of the evidence that it was so caused, or if you believe that said fire originated from any other cause, you will find for the defendant."

The first contention is that, "It being alleged in the petition that the cotton seed in question were delivered to the defendant company as a common carrier for immediate shipment, and there being evidence in the record supporting said allegation, it was error for the court to tell the jury in the special charge mentioned that the burden was upon the plaintiff to show by a preponderance of the evidence that the fire which destroyed the property was caused by sparks emitted from the defendant's engine, because under the law if the property was in possession of the defendant as a common carrier for immediate shipment the destruction of the property would fix its liability."

The petition of plaintiff contained two counts. The first was, in substance, that defendant had negligently permitted sparks to emit from its engine and set fire to and destroy the cotton seed, etc., and the second, in effect, was that the cotton seed had been placed in defendant's warehouse situated on its right of way and tendered to defendant for immediate shipment. That application for cars had been made and while awaiting the furnishing of cars and "while the seed were in the possession of defendant and in said warehouse upon the right of way, and after the same had been delivered to the said defendant for immediate shipment, the same were destroyed by fire."

There being two grounds alleged as a basis for a recovery by plaintiff and a charge covers one ground, the failure to charge upon the other ground, in the absence of a special charge requesting the court to so charge, will not be reversible error. No such charge was asked. Currie v. Gunter, 77 Texas, 490.

But it is contended that the charge was affirmative error, in that the burden was placed upon plaintiff to show the burning was caused by the negligence of defendant when the burden was on defendant as the seed had been placed in its possession for immediate shipment, and the defendant could not escape liability except by showing "the loss was due to an act of God, a public enemy, or inherent defect or negligence on the part of the shipper." While this contention of plaintiff states a correct principle of law, we do not think the facts support the contention. As we view the facts there was no such delivery of the seed to the defendant in error which would make it liable as a common carrier. The cotton seed were placed in a house situated on defendant's, right of way. It had been erected by some concern for its own use, presumably with defendant's consent, in storing and shipping seed, but said concern had gone out of business and the house was used for the same purpose. McDaniel, who owned a half interest in the Abbott Gin Company and was its general manager, testified that he had frequently made demands of defendant's station agent for cars to make shipments, and the agent had remarked, "Why don't you fill up that house down there until we can get a little more time and have more cars?" That this remark was made before he commenced putting seed in the house. He further testified that Mr. White, general counsel for the Abbott Gin Company, "was the one that instructed me to put those seed in that seed house. When I got that instruction from him I commenced putting those seed in there right away. Mr. White told me to fill up all the

houses with the seed if I could not get cars. No bill of lading had ever been executed for the shipment of any of this seed." The house was used during the summer to store grain in by grain buyers. The grain was stored for shipment on the railway. "I could not say that I had made demand for cars for this particular amount of seed." Defendant introduced two written statements made by McDaniel in regard to this matter, in one of which he says he rented the seed house from the Swift Cotton Oil Company, and in the other that he was instructed to put the seed in there by G. L. White, of Hillsboro. G. L. White testified: "I owned and controlled half of the Abbott Gin Company prior to and in October, 1906. In the management and control of the property the output of it I advised with Mr. McDaniel, and he acted through my advice in the management of it. I did have knowledge of the fact that cotton seed were put in the building which was destroyed down at Abbott. We had quite a lot of seed to move that year from Abbott and could not get cars. . . . I talked to the M., K. & T. Railway Company authorities with reference to cars every day over the 'phone almost about it. Those conversations did relate to the seed that I had at Abbott for shipment. We had urged the agent here to place us cars at Abbott because our seed was needing to be moved and our house was full and I knew we didn't have cars and I urged them every day to work and co-operate with us and get cars at Abbott."

T. H. Shaw, the agent of the defendant company at Abbott at the time of the fire, after testifying that there was cotton for shipment on the cotton platform, testified as follows: "That cotton platform is there on the right of way. I think that right of way is eighty feet from the main line, each side, right through the town there, and a hundred feet altogether. This seed house was on the right of way, too. I did not know that they were putting those seed in there, and I don't remember when the seed were put there. I knew there was seed there. I expect that Mr. McDaniel had talked to me about getting cars to ship those seed. I did not, that I remember, say anything to him about putting those seed in those houses. I would not be positive that I did not say something to him on the subject. So far as my recollection goes, I think it has always been rulable for them to store the seed in those houses to ship, or probably they wanted to hold them for a raise in price, I don't know. If they wanted to ship, that was the place to put them, because that was convenient to get them in the cars. They could either load them from them or from a wagon. If the car was not there at the time there was no place right on the right of way to put them except in those houses. In the absence of the car the only way to load them or have them there was to put them in the seed house, or dump them in the car when the car came. Those houses had been used for that purpose ever since they had been there, but then they did not ever store them there but once, to my recollection. They shipped them out. I remember Mr. McDaniel coming to me about cars several times about shipping cotton seed in 1906. During the fall of 1906, during his ginning season, he wanted to ship to the oil mill at Hillsboro, and often I got him cars as soon

as he placed them. . Sometimes we would get cars for him and sometimes we could not. He could not load many cars. They could not load three or four cars every day or could not load one car every day. Whenever he got a supply of seed we got him cars. Sometimes we could furnish them and sometimes we could not, which is always the case."

Considering the evidence in its most favorable light for plaintiff it fails to show that the defendant had received the cotton seed for immediate shipment. Take the remark testified to as having been made by the agent of defendant, which when properly construed means that plaintiff might store the seed in the house until cars could be furnished, and it shows there was no intention of then receiving the seed for shipment. That the agent was willing for the house to be occupied by the seed to await the procuring of cars, when he had failed to get them for a long time and did not know when he could get them, would be doing an injustice to hold that defendant had received them for immediate shipment and that it was liable for loss. No bill of lading had been issued by defendant, nor any other act done by it showing an intention to then accept the seed. We understand the rule of law that the issuance of a bill of lading is not necessary where the property is placed in the possession of the railway company for immediate shipment, but this is not that kind of a case. Neither party, under the facts, contemplated an immediate shipment, but that the seed should await the procurement of cars. We are of the opinion that under the circumstances of this case there is no reversible error in the failure of the court to charge on the matters complained of.

The proposition that the special charge submitted an issue not raised by the evidence, "in that there was no evidence whatever that the fire was caused by anything other than the escape of sparks from defendant's engine," is not tenable. The natural conclusion is that if the fire was not caused by the escape of sparks from defendant's engine, it was evident that it was from some other cause, and no harm could possibly have resulted to plaintiff by reason of such expression in the charge.

The second assignment of error is: "The court erred in giving to the jury special charge No. 3, requested by the defendant, because the evidence in the case did not raise the issue of contributory negligence, and because there was no testimony showing or tending to show that the property destroyed by the fire had been placed on the railway company's right of way without the consent of the defendant's agent at Abbott, and because there was no evidence showing or tending to show that at the time the cotton seed were placed in said building where they were stored, there was any cotton on the platform, or other inflammable material on defendant company's right of way, or platform in proximity thereto."

The first contention is: "The special charge was error in that there was no evidence that the property destroyed was placed there without the consent of the agent of the company."

Defendant's station agent testified: "I know Mr. McDaniel there at Abbott. I did not tell Mr. McDaniel to place said seed in that

house. I did not know that they were putting those seed in there and don't remember when the seed were put in there. I did not, that I remember, say anything to him about putting those seed in those houses." The witness further testified that the company had nothing to do with the seed house, as it did not belong to it, and that they did not accept seed until after they got a car. He further testified: "I never use those seed houses at all and had nothing to do with them." It was shown that the seed house the seed were stored in was leased by the West Cotton Oil Mills at the time of this fire, and that said building was situated about six feet south of a cotton platform upon defendant's right of way, used for the storage of cotton for shipment, and the defendant's house track, main line track and passing track were west of said structure. The fire originated on the other platform and was communicated to the seed house. The contention of plaintiff on this issue is not sustained.

The second contention is that, "It appearing from the evidence that plaintiff, desiring to ship cotton seed over the defendant's railroad, and the defendant having no cars available in which to load them, permitted them to be placed in a seed house on its right of way, which was used for loading grain and seed into cars of the defendant company, no issue of negligence of the plaintiff is raised by the fact that on the same right of way the defendant had cotton on its platform for shipment." The house in which the seed were stored was on the right of way near the track and adjacent to the company's platform on which it had placed bales of cotton for shipment. The cotton first caught and the fire was communicated to the cotton seed. The condition shown by the evidence raised the issue of contributory negligence and there was no error in the court submitting it. (Martin v. Texas & Pac. Ry., 87 Texas, 117; St. Louis S. W. Ry. v. Crabb, 80 S. W., 408.)

We have considered the other assignments of error, all of which we conclude are not well taken.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

Writ of error refused.