# Ohio Valley Electric Railway Company v. Scott.

(Decided November 14, 1916.)

## Appeal from Boyd Circuit Court.

1. Nuisance—Abatement of.—In the abatement of a nuisance the one abating it, unless the nuisance threatens immediate destruction of his property, is held to the exercise of ordinary care in doing so, and if by the exercise of such care, and at a reasonable expense, it may be abated without the destruction of the property creating it, it should be done, and for a failure to do so the owner of the property creating the nuisance may recover the damages resulting therefrom.

2. Nuisance—Abatement of.—The abater of the nuisance in such cases would have a right to recover from the owner of the property the reasonable cost incurred in abating it, and in a suit against him by such owner the damages should be reduced by the amount of such reasonable cost.

3. Nuisance—Abatement of by Railroad Company.—Where a house was lifted from its foundation by a flood, and carried some distance from the lot of the owner and deposited in the street across a railroad track, the railroad company has a right to abate the nuisance by removing the house, but in doing so it must exercise ordinary care, and if by the exercise of such care and a reasonable expense the house could be removed intact, this should be done, and, if not done, and the house should be wrecked, the company would be liable to the owner of the house for the difference between the value of the house at it stood on the track, less the reasonable cost of removing it; and in estimating the value of the house as it so stood the proximity of the plaintiff's lot to the place where the house stood should not be taken into consideration by the jury.

4. Nuisance—Value of Property—How Arrived at.—In arriving at the value of the house as it stood on the railroad track, evidence of the cost of the house, or what plaintiff paid for the property should not be admitted or considered by the jury.

HAGER & STEWART for appellant.

JOHN W. WOODS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant (defendant below) owns and operates as a part of its electric railway system a railroad track on Elm street in the city of Ironton, Ohio. The almost unprecedented flood in the spring of 1913 lifted from its foundations a cottage house located in the city of Ironton belonging to the appellee (plaintiff below) and

deposited it in the center of Elm street at its junction with second street, completely covering and blockading the track of defendant. It remained in that position, according to the proof, between ten and fifteen days, and was finally removed by the defendant wrecking it and placing the lumber upon plaintiff's lot. Alleging that the abatement of the nuisance by the defendant was done in a reckless and careless manner, and in disregard of her rights, the plaintiff brought this suit to recover damages which she fixed at $800.00.

A demurrer filed to the petition was overruled and an answer filed, the first paragraph of which is a general denial; the second paragraph stated that the house was torn down by the city of Ironton and not by the defendant, and further, that the agent who represented the plaintiff and who had charge of her property consented that it might be done. A denial of these allegations made in the second paragraph completed the issues, and upon trial the plaintiff recovered judgment for $250.00, to reverse which the transcript has been filed in this court and a motion made for an appeal.

Several grounds are relied on to reverse the judgment in the motion for a new trial, but those chiefly pressed before us are: (1) That the demurrer should have been sustained to the petition, and, failing in this, the peremptory instruction should have been given to find for the defendant. (2) That the court improperly instructed the jury. (3) That the verdict is flagrantly against the evidence.

It will at once be seen that the question raised by the demurrer and by the motion for a peremptory instruction, conceding that the plaintiff introduced testimony tending to establish the allegations of her petition, is the degree of care, if any, which one having a right to abate a nuisance must exercise in doing so. At the beginning it may be said that we are not concerned here with the question as to when, if at all, an individual may abate a strictly public nuisance, because the nuisance which the defendant abated in this case was, so far as it is concerned, a private one, notwithstanding it was also a public nuisance because of the obstruction of the street. So, in considering the question, we will confine our observations as to what the law requires of the abater of a private nuisance.

Our investigations convince us that generally in abating an ordinary nuisance the one abating it must exercise ordinary care under the circumstances to prevent the infliction of unnecessary harm or damage to the property creating the nuisance. This rule seems to prevail where the creation of the nuisance was caused by the wrongful act of another and *a fortiori* should it apply under the circumstances of this case, where the nuisance was produced through no act of the owner, but entirely through an act of God. In stating the rule as outlined above, Mr. Wood in his work on nuisance, third edition, section 740, after saying that the right of a private person to abate a nuisance is analogous to his right of self-defense in a criminal prosecution, in that he must use no more force than is necessary, says:

"This is really the rule as adopted and laid down in the best considered cases, and it is the true rule, and one that is eminently just. A person may abate so much of a nuisance, private or public, as is necessary to secure his rights, but if he is guilty of any excess, he is liable therefor *pro tanto*. Every man proceeds to abate a nuisance at his peril. He judges for himself, and if he misjudges he is answerable for the consequences."

In section 741, in discussing the question as presented by facts almost similar to those we have here, the same author says:

"A person who takes the abatement of a nuisance into his own hands, whether the same is public or private, must do as little damage as possible, and under no circumstances will he be justified in destroying the materials of which the nuisance is composed, or in converting them to his own use."

In second edition of American and English Encyclopedia of Law, volume 1, page 84, the rule is recognized in this statement:

"The right to abate is limited to the removal of that in which the nuisance consists; and for any excess of abatement the party abating will be liable to an action."

To this statement of the text is appended a long list of authorities from numerous courts, which, to include them in this opinion, would be an unnecessary encumbrance of same. The rule is again stated in 29 Cyc. 1217, as follows:

"A person abating a nuisance must not in so doing be guilty of any excess, or inflict any unnecessary in-

jury; and he can remove only so much of the objectionable thing as actually causes the nuisance." This text is also well fortified with authorities. City of Orlando v. Pragg, 19 L. R. A. 196, and notes.

The question has heretofore been before this court in the case of Gates v. Blincoe, 2 Dana 158. In that case the plaintiff was the owner of a mill dam which caused the water to back up and overflow the property of the defendants, who themselves undertook to abate what they considered to be a private nuisance to them. The abatement was attempted to be effected by the cutting of a ditch so as to drain off the collected water, but in doing so they constructed the ditch larger than was necessary to remove the water from their land, which resulted in removing practically all the water, or reduced it to such an extent as to render it practically useless for mill purposes. The right to abate a private nuisance was recognized, qualified, however, by the requirement that the one abating it should inflict no more damage than was necessary to accomplish that end. Upon this point, this court, speaking through Judge Robertson, said:

"If the defendants had a right to cut a ditch for abating a nuisance, their right was limited to that which was a nuisance; they had no right to draw off more water than so much as would abate the nuisance. If they transcended that limit, they did an injury to the plaintiff for which he might have an action."

We conclude, then, that where the right of a private individual exists to abate a nuisance, he must exercise ordinary care in doing so to protect the interest of the owner of the property which produces the nuisance; if he fails to do this, and loss occurs, the one whose property is involved may recover of him the damages produced.

There is an exception to this general rule, where the nuisance produces imminent peril to the property of the abater, and he is compelled, in order to save his property, to act in emergency. In such cases the courts do not exact that degree of care from the one abating the nuisance as is required by the general rule heretofore considered. Of this class is the case of McKeesport Saw Mill Co. v. Penn. Co., 122 Fed. Rep. 184, relied on by counsel for defendant. In that case a coal barge had become loosed from its moorings and floated down the

stream in time of high water, lodging against the false works of a railroad bridge belonging to the defendant, thereby endangering the safety of the bridge. The defendant, in order to save its property, was held not to be required, in dislodging it from the bridge, to adopt the method which would result in saving the barge and its contents when to do so would entail such delay as would in all probability result in a destruction of plaintiff's property. In other words, that the danger to its property was imminent, and created an emergency authorizing the defendant to act immediately in order to save its property.

Clearly the case we have here does not belong to the class of cases creating the exception. While the house on defendant's track obstructed the running of its cars at that place, yet neither its track nor its cars were threatened with destruction, and as a matter of common knowledge we know that if the house could have been removed at all it would have required but little more time than that required to tear it down. From the foregoing, we are convinced that the demurrer to the petition was properly overruled, and, under the testimony, the instruction to find for the defendant should not have been given.

The evidence in behalf of the plaintiff tends to show that the house, which consisted of four rooms and was newly built, could have, at a reasonable expense, been removed from the track and street intact and without its being wrecked. The evidence for the defendant somewhat preponderates to the effect that because of the condition of the house, as well as its faulty construction, the same could not have been removed in any other way than tearing it down. This made an issue for the jury under appropriate instructions. This brings us to the second ground urged for a reversal—that of failure to properly instruct the jury.

Without encumbering this opinion with a copy of the instructions, it is sufficient to say that in instruction number one, of which complaint is made, the court told the jury this:

"And if the jury shall find and believe from the evidence that the defendant could, by the exercise of ordinary care and reasonable outlay, have removed the house from its tracks *and placed it upon plaintiff's said lot,*" etc. We are convinced that the requirement therein that

the defendant should "place it upon plaintiff's said lot" was error. All that defendant was required to do, if plaintiff's theory of the case be true, was if it could be done at reasonable expense and in the exercise of ordinary care to remove the house from its tracks and off the street. Under no circumstances could it be required to carry the house any greater distance than was necessary to effect such removal, and upon another trial this clause should be omitted. The closing sentence of that instruction is: "And in estimating any damages allowed, the jury may take into consideration the fact that plaintiff owned the lot from which the house came, and had the right to remove the house thereon, if same could have been done at a reasonable outlay and in a reasonable time." This was also error, because defendant's rights cannot be affected by the fact that plaintiff was the owner of a lot in the vicinity of the nuisance, nor can the sum which it may be called upon to respond in damages be affected thereby. As well might it be said that the house would be worth more to one who was equipped with the necessary tools and implements to remove it than it would be worth to one not so equipped. The fact that the plaintiff may have owned a lot in the vicinity to which the house could be removed might make it worth more to her on that account, but we do not think under the facts of this case that this should enter into the consideration of how much the defendant should be called upon to pay for its negligence, if any. The court will therefore omit this clause upon another trial.

The measure of damages submitted by the instructions is the difference in "the fair or reasonable market value of the house in the street just prior to the time defendant attempted to move it from the street and the fair or reasonable market value of the material in same after the house was wrecked and the material therein piled on plaintiff's lot." This would require the plaintiff to remove the house, if it could be done with reasonable expense, without giving it credit for anything except the material from the torn-down house. If, under the proof, the jury should find that with the exercise of reasonable and ordinary care, and at a reasonable expense, the house could have been removed out of the street without tearing it down, evidently the defendant should be credited by the cost of the removal; so that, instead of the measure of damages as stated in

the language we have quoted, the jury should have been told that if it found for the plaintiff it should return a sum equal to "the difference in the fair or reasonable value of the house in the street just prior to the time defendant attempted to move it from the street less what it would have reasonably cost to move it, and the value of the lumber from the wrecked house, not exceeding the amount claimed in the petition." The reduction of the value of the house as it stood before removal by the cost of removing it is not only justified by all principles of right and justice, but it is also authorized by the courts and writers upon the law. In the excellent notes to the case of Forester v. Juniata, 55 Amer. Dec. 506, the rule is stated:

"Where property that has been carried away is taken up and saved by others, they are entitled to be paid the reasonable cost and expenses incurred by them in saving it." See, also, Tome v. Dubois, 6 Wallace 548; Winslow v. Walker, 1 Hayw. 193; Reeder v. Anderson 4 Dana 193.

While the facts in the 4th Dana case just referred to are not identical with those in the instant case, still they are analogous, and the principle applied is applicable to the facts of this case. In that case a runaway slave was apprehended, and the one apprehending him was permitted to recover reasonable compensation from the owner. We are firmly convinced that the law will raise an implied promise from the owner of the property creating the nuisance to compensate the one abating the nuisance for the reasonable cost of such abatement, when done in the exercise of ordinary care, and so as to preserve the property as much as possible.

As to the third ground urged, that the verdict is flagrantly against the evidence as to its size, we find considerable room for the contention. It is shown that the stack chimney in the house had fallen down, knocking out the window sash and perhaps some of the doors, tearing down some of the partition walls and breaking holes through the floors; that the house was very cheaply built and was covered with mud, both inside and out, and in its position was warped and twisted so that many of its parts had become unfastened. Since the flood the lot upon which the house stood, and an adjoining lot upon which stands a similar house in size and value, has been sold for $125.00, and there is other proof of a

very convincing nature that the house as it stood when left upon the railroad track was of but little, if any, value, although there is testimony produced by the plaintiff that its value was even more than that fixed by the jury. Some of this testimony, however, we regard as incompetent, particularly that as to the cost of the property, and what it cost to build the house. None of this could throw any light upon the value of the house as it stood just before being removed. Of course, in combating the defendant's contention that the house could not have been removed, the length of time that it had been constructed might be shown, but what it cost to build it has no place in this record, according to our conception. However this may be, inasmuch as the judgment will have to be reversed because of the errors heretofore considered, we will not base the reversal upon this third ground, because in all probability upon another trial the evidence may remove this objection.

The motion for the appeal is sustained, and the appeal granted, and the judgment is reversed with directions for proceedings consistent with this opinion.