PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

---

### UNITED STATES TORPEDO CO. v. LINER et al. (No. 191.)

Court of Civil Appeals of Texas. Eastland. Oct. 7, 1927.

Rehearing Denied Dec. 9, 1927.

**1. Negligence ☞134(2)—Negligence may be established by circumstantial evidence.**

Cause of an accident may be inferred from circumstantial evidence, and negligence may be established by circumstantial evidence.

**2. Trial ☞178—On defendant's motion for peremptory instructions, evidence must be viewed most favorably to plaintiffs and, if conclusion to be drawn is doubtful, motion must be denied.**

On defendant's motion for peremptory instructions, that view of evidence most favorable to plaintiffs' case must be taken, and, if there is any doubt as to conclusion to be drawn from whole evidence, motion must be denied.

**3. Negligence ☞121(2)—Doctrine of res ipsa loquitur applies only where instrumentalities causing accident are wholly within control of party charged with negligence.**

Doctrine of res ipsa loquitur is applied only where instrumentalities out of use of which accident occurred are wholly within control of party charged with negligence at time of accident.

**4. Contracts ☞187(1)—Where contract between well owner and oil well shooter accrued to benefit of interveners owning interests in land and minerals, law established privity of contract.**

Where contract between one owning interest in oil and gas lease and defendant oil well shooter accrued to benefit of interveners own-

ing land covered by lease and owning interests in minerals which would be reduced to possession through well drilled, defendant owed them duty created by law, since law established privity of contract and law implied same obligations and responsibilities to them that were due party with whom he contracted.

**5. Parties ☞40(2)—Where damage to plaintiff's interest in oil well would damage interveners' interest in minerals being produced from well, they were properly permitted to intervene.**

In action for damages alleged to have been sustained because of negligence of defendant in shooting oil well, where any damage to plaintiff's undivided interest in oil well would also damage interest of interveners who owned interests in minerals being produced from well, they were properly permitted to intervene.

**6. Appeal and error ☞1041(2)—Defendant could not complain of alternative allegation in amended petition increasing damages, where recovery was not had on theory alleged therein.**

Defendant could not complain that third amended original petition contained alternative allegation increasing damages, on ground that amendment set up different measure of damage, where recovery was not had on theory set out therein, even though there may have been departure from original suit.

**7. Evidence ☞358—Map held properly admitted to clarify testimony as to location of neighboring oil wells, over objection that it was not properly authenticated.**

In action for damages alleged to have been sustained because of negligence of defendant in shooting oil well, map *held* properly admitted to clarify testimony of witness as to location of various neighboring wells and leases, over objection that it was not properly authenticated, where it was but cumulative of other testimony offered by plaintiff for purpose of establishing value of well as producer.

**8. Witnesses ☞318—Admitting plaintiff's testimony that fluid produced in courtroom was crude oil, in action for negligence in shooting well, held not error.**

In action for damages alleged to have been sustained because of negligence of defendant in shooting oil well, plaintiff's testimony that fluid produced by him in bucket in courtroom was crude oil out of well in question and that it would burn and that he had burned some of it *held* properly admitted, since evidence complained of was cumulative of other evidence offered as to quality of oil produced from well, and exhibiting of oil was corroborative of witness' testimony that well produced oil.

**9. Evidence ☞194—In action for negligence in shooting oil well, introducing in evidence bumper squib first run in well, which failed to explode, held not error, and identification was for jury.**

In action for damages alleged to have been sustained because of negligence of defendant in shooting oil well, introduction in evidence of bumper squib first run in well, which failed to explode and contents of which were exploded

in slush pit, *held* not error, where mechanical construction of bumper squib, which prematurely exploded, was material, and question of identification of shell as being same unexploded shell was for jury.

**10. Appeal and error ⬅1050(1)—Admitting cumulative evidence in action for negligence in shooting oil well held harmless error.**

In action for damages for alleged negligence in shooting oil well, admitting plaintiff's evidence as to what representatives of Railroad Commission told him with reference to plugging well, if error, *held* harmless, where letter from plaintiffs' attorneys to defendant was admitted in evidence without objection and contained practically same statements which were objected to in plaintiff's testimony.

**11. Appeal and error ⬅1058(2)—Excluding answer to cross-question, What plaintiff meant by certain allegation? held not prejudicial error, where other questions concerning issue were permitted.**

In action for damages for alleged negligence of defendant in shooting oil well, excluding answer to cross-question to plaintiff, "What do you mean by alleging here friction might put the bumper squib off?" on objection from plaintiff that he did not make allegation but that his attorneys made it, *held* not prejudicial error, since it did not exclude questions which defendant could have asked and did ask concerning issue as to whether friction actually put off the shot.

**12. Evidence ⬅553(2)—Permitting hypothetical question as to propriety of shooting oil well omitting important element held error.**

In action for damages for alleged negligence of defendant in shooting oil well, where expert witness testified on propriety of shooting well making 60 to 75 barrels of oil in three days after it started producing, objection to hypothetical question, not embracing as necessary part thereof that everything from well, including salt water, was being swabbed into tank, and which thus failed to embrace a very important fact that had support in evidence, should have been sustained.

**13. Appeal and error ⬅1050(1)—In action for negligence in shooting oil well, admitting evidence of defendant's shooter's statements after premature explosion, not within scope of authority, held prejudicial error.**

In action for damages for alleged negligence of defendant in shooting oil well, admitting evidence that soon after premature explosion defendant's shooter said to witness that he was going to see the boys and see if he could get them to help plaintiff out and other remarks *held* prejudicial error, since statements were not admissible as admission of defendant's liability for negligence and were not made within scope of agent's authority, but at most statement was but an expression of sympathy and inadmissible as such.

**14. Appeal and error ⬅672—Award of excessive damage based on mathematical computation presents fundamental error.**

Award of excessive damage based on mathematical computation presents fundamental error.

**15. Appeal and error ⬅932(1)—In action for negligence in shooting oil well, reviewing court must presume, in support of theory case was tried on, that working interest did not include casing, precluding sustaining contention that judgment awarded double damages.**

In action for damages for alleged negligence in shooting oil well, where case was tried upon theory that working interest did not include casing of well, in absence of timely exceptions to submission of issues and entering of judgment upon that theory, Court of Civil Appeals must presume, in support of judgment, that working interest in well did not include casing in well, no evidence to contrary appearing, so that contention that trial court entered judgment for double damages could not be sustained.

**16. Damages ⬅108—Measure of damages for destruction of oil well is difference in market value immediately before injury and market value of salvage.**

In action for damages for alleged negligence in shooting oil well, measure of damages for tortious destruction of well was difference in cash market value of well immediately before injury and amount of cash market value of salvage remaining after deducting expense of salvaging, provided such expense did not exceed value of salvage.

**17. Damages ⬅116—In action for negligence in shooting oil well, plaintiff was entitled to reasonable expense in attempt to save well.**

In action for damages for alleged negligence in shooting oil well, where plaintiff had attempted to save well, he was entitled to recover any reasonable expense incurred in prudent attempt to save well after injury.

**18. Explosives ⬅10—One handling nitroglycerin was required to exercise caution of ordinarily prudent man confronted by such obvious peril.**

Where plaintiff had employed defendant to shoot an oil well, plaintiff was required, in handling dangerous substance such as nitroglycerin, to exercise care and caution determined by conduct of an ordinarily prudent man confronted by such obvious peril, under like circumstances, to avoid injury.

**19. Explosives ⬅10—Whether oil well owner was negligent in demanding that well shooter run bumper squib at night held for jury.**

In action for alleged negligence in shooting oil well, question whether plaintiff was guilty of contributory negligence in demanding that well shooter run bumper squib at night *held* for jury.

**20. Explosives ⬅10—Oil well owner's negligence in failing to determine condition of well before well shooter used bumper squib held for jury.**

In action for damages for alleged negligence in shooting oil well, question whether owner of well was guilty of contributory negligence in failing to run bailer to determine condition of well prior to running of bumper squib *held* for jury.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**21. Appeal and error ⬨⟳1067—In action for negligence in shooting oil well, failure to charge on issues of plaintiff's contributory negligence held reversible error.**

. In action for damages for negligence in shooting oil well, failure to charge jury on issues of plaintiff's contributory negligence in demanding bumper squib run at night, in failing to run bailer before running bumper squib, and in placing hand on wire between reel and bumper squib, *held* reversible error.

**22. Negligence ⬨⟳119(6)—Contributory negligence shown by plaintiff's evidence held for jury, though not pleaded.**

In action for damages for alleged negligence in shooting an oil well, question whether plaintiff was guilty of contributory negligence in placing his hand on wire between reel and bumper squib while it was being run *held* for jury, though not pleaded, where plaintiff's evidence brought out fact that he placed his hand on wire.

Appeal from District Court, Stephens County; C. O. Hamlin, Judge.

Action by E. R. Liner against the United States Torpedo Company, in which R. F. Brown and others intervened. From a judgment for plaintiff and interveners, defendant appeals. Reversed and remanded.

Benson & Dean, of Breckenridge, and G. C. Spillers, of Tulsa, Okl., for appellant.

Hawkins, Hawkins & David, of Breckenridge, for appellees.

BOWERS, Special Chief Justice. The personnel of this court having changed since the opinions originally disposing of this case were filed, the case has been considered as upon original submission, and all former opinions filed in this cause are hereby ordered withdrawn.

This suit was brought by E. R. Liner against the United States Torpedo Company, a corporation, for damages alleged to have been sustained by reason of negligence of the defendant in shooting an oil well owned by the plaintiff, Liner. The plaintiff alleges that he was the owner of an undivided fifteen thirty-seconds interest in the oil and gas lease upon which the well was situated, and of certain casing in the well on the lease. Further allegations are, in substance, that, when the well had reached a depth of 3,249 feet the defendant was employed by plaintiff to shoot the well with nitroglycerin; that Bill Blair, the defendant's agent, placed the shot in the well, and then attempted to explode the shot with jack squibs; that, being unsuccessful, defendant sought to use for this purpose a bumper squib containing nitroglycerin and explosive caps. Plaintiff alleges that the bumper squib was negligently lowered into the hole at a dangerous and reckless rate of speed, in disregard of the warning of plaintiff that it would encounter fluid at a high level

in the hole, and that the bumper squib was prematurely exploded by coming into violent contact with the fluid at a depth of about 1,800 feet, the explosion proximately resulting in the destruction of the well, and the loss of a large amount of casing in the well below the 1,800-foot level. Certain expenditures were later made by plaintiff in his efforts to reclaim the well. The direct and proximate result of the explosion is alleged to have been the letting of salt water into the well, ruining it as a producer of oil and gas, and destroying certain casing in the hole. Plaintiff alleged that the well produced about 25 barrels of oil and 1,000,000 cubic feet of gas during the three days prior to the shooting of the well, and that its reasonable market value as a producing well before the shot was $35,000, and also alleged the market value of the casing, and asks judgment for the value of his interest in the well and all the casing lost, as well as the expense incurred in his effort to reclaim and save the well.

The appellant, defendant below, after pleading a general denial, special exception, and general demurrer, pleads contributory negligence on the part of the plaintiff Liner, which proximately caused the explosion, alleging (1) that Liner knew that the fluid was standing at 1,800 feet in said well, but failed to so inform appellant, but, on the contrary, told appellant that the well was clean and ready to shoot when it placed the shot therein; (2) that Liner knew, but did not inform appellant, that the well was cased with old secondhand casing, which had been used many times, and which was old, bent, and twisted, had been rethreaded, and was likely to strike the rough and bent places and friction would thereby cause an explosion; (3) that Liner, after appellant's refusal to shoot the well at night, as an inducement, agreed to assume the risk; (4) that Liner failed and refused to run the bailer into the well after the glycerin shot had been in the hole for about eight hours, the hole being appellees', and his duty being to free the hole of obstructions.

R. F. Brown and wife, the owners of the landowner's royalty, and other parties who owned undivided interests in the lease, were permitted to intervene with appropriate allegations setting up their interests in the subject-matter. The defendant made the same answer to all such pleas of intervention.

The court submitted the case upon special issues, defining negligence and proximate cause, and to the issues submitted the jury answered that the well had a market value in its condition immediately before the explosion of the bumper squib; that the explosion of the bumper squib at a depth of approximately 1,800 feet destroyed the well; that the explosion of said bumper squib was caused

---

⬨⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by the negligence of the defendant, United States Torpedo Company, and that such negligence was the direct and proximate cause of the damage to said well. Answering other special issues, the jury found "the cash market value of the seven-eighths working interest in said well on September 27, 1924," to be $10,000, and the market value of the one-eighth landowner's royalty at said date was found to be $500. In answer to the remaining issues, they found the value of the pipe plaintiff was unable to salvage, and the reasonable expense of labor, water, and gas incurred in plaintiffs' attempt to save the well.

Upon the answers of the jury, judgment was entered in favor of plaintiff, E. R. Liner, for $9,222.74; R. F. Brown was awarded $532. The other interveners were awarded the sums appropriate to the respective interests in the well owned by them. As an item of damage, the court allowed legal interest from the date of the injury complained of.

Defendant's motion for a new trial having been made and overruled, an appeal was prosecuted to this court.

[1] The appellant, defendant below, in its first assignment, predicates error upon the refusal of the trial court to instruct the jury to find for the defendant at the close of plaintiffs' evidence. Appellant insists that, when plaintiff and interveners rested their case, they had not made out a prima facie case on the issues of negligence and proximate cause. We have carefully read and considered the evidence introduced by plaintiff before resting his case, and we are of the opinion that this assignment is not well taken. The explosion occurred some 1,800 feet below the surface in pipe measuring 4⅞ inches in inside diameter, so the proximate cause of the explosion must necessarily be established, if it can be established with certainty, by circumstantial evidence. The cause of an accident may be inferred from circumstantial evidence; and negligence may be established by circumstantial evidence. Bock v. Fellman Dry Goods Company (Tex. Com. App.) 212 S. W. 635.

[2] We will not go into the testimony introduced by plaintiffs, for the reason that it is too lengthy to detail here. But, we believe that the evidence is sufficient with respect to proximate cause and negligence to take the case out of one of mere surmise and speculation. On defendant's motion for peremptory instructions, that view of the evidence most favorable to plaintiffs' case must be taken, and, if there is any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. The defendant's requested instruction No. 1 was properly refused.

[3] Appellant seeks to bring this case under the rule announced in Carter Oil Company v. Independent Torpedo Company, 107 Okl. 209, 232 P. 419, in which plaintiff, under general allegations that defendant was negligent in shooting a well, during which a premature explosion occurred, ruining the well, based his cause of action upon the doctrine of res ipsa loquitur. The court held that, since the well and casing were furnished by the plaintiff, the doctrine did not have application. The doctrine of res ipsa loquitur is applied "only where the instrumentalities out of the use of which the accident occurred are wholly within the control of the party charged with negligence" at the time of the accident. In the case now under consideration, the act of negligence relied upon was specifically alleged. In the Carter Case the only witness testifying as to the cause of the explosion, said, "There might have been some glycerin there somewhere on the shell, or something—something happened." The court held that "the circumstances proven as surrounding the explosion afford no reasonable solution as to its origin." In the case before this court the facts proved afford, in our opinion, a reasonable and definite basis from which the origin of the explosion may be inferred without leaving to presumption any essential fact. We do not consider the Carter Case in point, the evidence in this case having been adduced upon specific acts of negligence pleaded by the plaintiffs.

The appellant in its fourth assignment complains of the refusal of the trial court to give a peremptory instruction for the plaintiff at the close of all the evidence. We have considered the evidence upon the entire case, and hold that the evidence was sufficient to take the case to the jury upon the controverted issues of proximate cause and negligence.

[4] R. F. Brown and wife, owners of the land covered by the lease, and of the one-eighth royalty under the lease, intervened. Other parties owning interests in the minerals also intervened. All adopted plaintiffs' allegations and prayed for damages. Defendant excepted to these pleas because there was no privity of contract between the interveners and defendant, and because interveners were not interested in the subject-matter of the suit.

Though there was no contract between the interveners and appellant, the law establishes the privity where the contract between appellee and appellant accrued to the benefit of the interveners who owned interests in the minerals in the land and which would be reduced to possession through the well drilled by appellee Liner, and appellant owes them a duty created by law. The law implies the same obligations and responsibilities to them that were due appellee Liner. Allen v. Traylor (Tex. Com. App.) 212 S. W. 945.

[5] Since any damage to Liner's undivided interest in the well would also damage the interest of the interveners who owned interests in the minerals being produced from the well, they were properly permitted to inter-

vene. Teel v. Rio Bravo Oil Co., 47 Tex. Civ. App. 153, 104 S. W. 420; T. & P. Ry. Co. v. Andrews (Tex. Civ. App.) 80 S. W. 390.

[6] The third amended original petition contains an alternative allegation, based upon the facts originally pleaded, that, if the well was not a producer in paying quantities, plaintiff had a right to ascertain the fact, and, the explosion having deprived him of this right, he was entitled to recover for the cost of the well, and in amended allegation increased damages from $20,500 to $35,000. The appellant contends that this amendment set up a different measure of damage. This amendment did not set up a new cause of action; and, as held in the case Telfener v. Dillard, 70 Tex. 139, 7 S. W. 847, though there may have been such a departure from the original suit, no injury was done to the defendant, and it cannot complain, since recovery was not had on that theory.

[7] In connection with the testimony of the appellee Liner, who described in detail the location of producing wells and dry holes in the vicinity of Liner well No. 2, a map of Brown's Bend was introduced in evidence and used by the witness in explanation of his testimony, over the objection of appellant that it was not properly authenticated. Its use was permissible under the rule announced in the cases of Griffith v. Rife, 72 Tex. 185, 12 S. W. 168, and Smith v. Bunch, 31 Tex. Civ. App. 541, 73 S. W. 559. It was not used as independent evidence upon a controverted issue, as in Kelley v. Fain (Tex. Civ. App.) 168 S. W. 869. The map was but cumulative of other testimony offered by appellees for the purpose of establishing the value of the well as a producer, and its use merely clarified the testimony of the witness as to the location of various neighboring wells and leases.

[8] The testimony of appellee Liner that certain fluid produced by him in a bucket in the courtroom was crude oil out of the Liner No. 2 well was objected to as hearsay. His testimony that the oil in the bucket would burn, and that he had burned some of it two hours before, and that, if he had not put out the blaze, all of it would have burned, was objected to as self-serving and prejudicial, inducing the jury to believe the well was or could have been made a producer of oil in paying quantities. Appellee's other evidence on the point was in effect that some of the oil produced from Liner No. 2 well was sold for fuel oil and was used by the purchaser for firing a boiler. Liner said he boiled down four barrels of it for use as cylinder oil in a steam engine. He testified that some of the oil from well No. 2 had been in his possession in the No. 2 engine house and on the Donnell lease, and the oil exhibited was part of a drum of the oil taken from the well. This evidence complained of was cumulative of other evidence offered as to the quality of the oil produced from the well. The exhibiting of the oil was corroborative of the witness' testimony that well No. 2 produced oil. The objections go to the weight of the witness' testimony alone. The oil was not offered in evidence. No experiment was made in the presence of the jury. Witness' testimony related to facts concerning the oil, to the effect that it was from well No. 2 and would burn. The assignment is overruled.

[9] The introduction in evidence of the bumper squib first run in the well, which failed to explode and the contents of which were exploded in the slush pit, was not error. The mechanical construction of the bumper squib which prematurely exploded was very material. The question of the identification of the shell as being the same unexploded shell was for the jury. Bill Blair, the shooter, testified that it was like the one which exploded prematurely. The sole objection made to its admission, that it would prejudice the jury against defendant, is not well taken.

[10] Assignments of error Nos. 26 and 27 complain of the ruling of the court in admitting evidence from the plaintiff, Liner, as to what representatives of the Railroad Commission of Texas told him with reference to plugging the well. A letter from plaintiffs' attorneys to the defendant was admitted in evidence without objection, and contained practically the same statements which were objected to in Liner's testimony. This renders harmless any possible error in the ruling of the trial court, and these assignments are overruled.

[11] On cross-examination, the plaintiff, Liner, was asked, "What do you mean by alleging here friction might put the bumper squib off?" The court excluded the answer upon objection from the plaintiff that he did not make the allegation but that his attorneys made it. We believe this question was permissible on cross-examination, but the ruling is not prejudicial error, because it did not exclude questions which appellant could have asked and did ask, concerning the issue as to whether friction actually put off the shot. We therefore overrule this assignment.

[12] The witness Kingston testified as an expert on the propriety of shooting a well which makes 60 to 75 barrels of oil in three days after it starts producing, and that, if there was a chance in the world to bring in more production, shooting would be the usual procedure. Objection was made that the hypothetical question did not embrace as a necessary part thereof that everything from the well, including salt water, was being swabbed into the tank. The question, omitting to include the element of salt water therein, failed to embrace a very important fact that had support in the evidence. The question should have been so framed as to reflect the theory

of the parties propounding it as shown by the facts admitted, or in evidence, and we do not think the appellee was entitled to ask an improper question of this character and thereby cast upon the opposing counsel the burden of supplying its omissions or deficiencies. The objection should have been sustained. 22 C. J. §§ 795, 796; De Hoyes v. G., H. & S. A. Ry. Co., 52 Tex. Civ. App. 543, 115 S. W. 75; Texas Employers' Ins. Ass'n v. Fitzgerald (Tex. Civ. App.) 292 S. W. 925; Id. (Com. App.) 296 S. W. 509.

[13] The witness Mimms testified that soon after the premature explosion he rode back to town with Bill Blair, the shooter, and, when they had gone a mile or so from the well, Blair said to him:

"You know that is hell, and would not happen to a big company; it has got to happen to some poor devil like Liner that can't afford it. I said, 'Yes; it is hard on him, bad for Liner.' Then Blair said, 'You know I am going to see the boys and see if I can get them to help him out.' That is what he said to me."

This testimony was objected to by defendant "because the agent had no authority to bind the company by such conversation, and such conversation would not be binding upon the defendant company."

Blair's statements were evidently offered as an admission of liability on the part of the appellant, or of negligence upon his part. We can see no other purpose in tendering such testimony, but the objection of appellant clearly contends that Blair, "the agent, had no authority to bind the company by such conversation. * * *" Blair's statements were not admissible as admission of liability of appellant nor of negligence upon his part, nor were they admissible to bind the appellant in the respect suggested. Further and independently we do not think, under the facts of the case, that the statements when made were within the scope of the agent's authority. Texas Company v. Strange (Tex. Civ. App.) 154 S. W. 327; City of Austin v. Forbis, 99 Tex. 234, 89 S. W. 405; G., H. & S. A. Ry. Co. v. Levy et al., 45 Tex. Civ. App. 373, 100 S. W. 195; Gulf, T. & W. Ry. Co. v. Culver (Tex. Civ. App.) 168 S. W. 514. At most, Blair's statement was but an expression of sympathy and inadmissible as such. Winter v. Van Blarcom, 258 Mo. 418, 167 S. W. 498. However, we are convinced that the statements of Blair introduced in evidence were of such a character that the admission thereof was highly prejudicial, and in all probability said statements were appropriated by the jury for the very purpose for which they were not admissible. Bain Peanut Co. v. Pinson (Tex. Com. App.) 294 S. W. 536.

The error of the court in admitting the testimony was not harmless, and the assignment is sustained.

[14, 15] The appellant urges fundamental error in its seventeenth proposition which is that—

"The court erred in entering judgment for double damages, for damage to the well, which included the personal property therein, and damage for the personal property in addition."

Appellant's point is that the cash market value of the seven-eighths working interest which the jury found to be $10,000, included the value of the casing in the well, and that instead of adding to said sum the amounts representing the value of the lost casing, the court should have deducted the value of the salvaged casing from said sum in computing the amount for which judgment would be rendered. An award of excessive damage based upon mathematical computation presents fundamental error. Chicago, R. I. & G. Ry. Co. v. Howell (Tex. Civ. App.) 166 S. W. 81. This case was tried upon the theory that the well was a producer of oil and gas in paying quantities prior to the explosion, and we find evidence in the record which supports the plaintiffs' allegations in that respect. The witness E. L. Proper testified that an oil well in that locality on the date of the injury had a cash market value of $750 a barrel of production, based upon the seven-eighths "working interest." To our minds this testimony contemplates a producing well, which necessarily would include such casing in the well as must be used for protecting the hole from cavings, water, and extraneous substances to make production possible. Other testimony in the record by Liner and by the witness, Jack Roberts, seems to treat a working interest as something separate and apart from the casing in the well. No testimony is found in the record which directly states what is meant by a working interest, and whether that term as used includes any casing in the well. Plaintiffs' petition alleged the market value of the well to be $35,000, and it contained further allegations concerning the market value of the casing lost and the necessary expense incident to the attempt made by Liner to save the well. The case was tried upon the theory that the "working interest" did not include casing, and, in the absence of timely exceptions to the submission of issues and entering of judgment upon that theory, we are called upon to presume, in support of the judgment, that the working interest in the well did not include the casing in the well, no testimony to the contrary appearing in the record. Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132; Boatner v. Providence-Washington Ins. Co. (Tex. Com. App.) 241 S. W. 136.

No contention was made by either party that the damage to the well could have been repaired; in fact, it is shown that Liner made an unsuccessful attempt to save the

well after the explosion. The effect of the explosion was to destroy the well except for some casing which the owner salvaged from it above the point where the premature explosion occurred. The allegations of damage are for injury to the well, which practically destroyed it and which rendered it worthless as a means of recovering oil and gas from the leasehold; there being no claim of damage predicated upon injury to the leasehold other than its incidental relationship to the well.

[16] The testimony in this case shows that the well had a cash market value before the explosion, and that the salvaged casing had a cash market value. Under the circumstances in this case, the measure of damage for the tortious destruction of the well is the difference in the cash market value of the well immediately before the injury and that amount of the cash market value of the salvage remaining after deducting the expense of salvaging, provided such expense does not exceed the value of the salvage. T. & P. Ry. Co. v. Levi & Bros., 59 Tex. 674; Ohio Valley Electric Ry. Co. v. Scott, 172 Ky. 183, 189 S. W. 7, L. R. A. 1917C, 1038; Chicago, R. I. & P. Ry. Co. v. Quigley, 57 Okl. 260, 156 P. 669, L. R. A. 1918A, 273.

[17] In a case of this kind the owner would, in addition to the above, be allowed to recover any reasonable expense incurred by him in a prudent attempt to save the well after the injury. T. & P. Ry. Co. v. Levi & Bros., supra.

It follows, in the light of our presumption in support of the judgment, that the trial court did not enter judgment for double damages as claimed by appellant. Since the value of the salvage did not enter into its computation of damage, the same result is reached as if the value of all casing had been found and the value of the salvage deducted therefrom. If the pleadings and the evidence are substantially the same upon another trial, the measure of damages above announced will be applicable to this case.

Under its eighteenth proposition, appellant presents alleged error of the trial court in not submitting to the jury the issue of contributory negligence, and its requested charge, bringing the issue to the attention of the court, was refused.

The testimony of appellee Liner and that of the shooter Blair is contradictory concerning the risk of running the bumper squib at night, but both witnesses are agreed that Blair asked Liner to wait until morning to run it. According to Liner, Blair said he did not want to fool with shooting the well at night. Blair testified that he told Liner running the squib was a ticklish job and that witness wanted to wait until morning,

"and he said I had to do it that night; he told me to go ahead and run it that night and he would take a chance on it."

[18-20] In the handling of a dangerous substance such as nitroglycerin, the plaintiff is required to exercise care and caution determined by the conduct of an ordinarily prudent man confronted by such obvious peril under like circumstances, to avoid injury. If the evidence raises the issue as to whether Liner was guilty of a negligent act in demanding that the bumper squib be run at night, thereby contributing to the proximate cause of the injury to his property, the appellant is entitled to have such defense submitted to the jury.

We are of the opinion that the evidence in the case at bar fairly raises the issue of contributory negligence, as to the demand by Liner that the bumper squib be run at night. The evidence concerning Liner's failure to run the bailer to determine the condition of the well prior to the running of the bumper squib is contradictory concerning whether Liner told Blair he would not run the bailer, and would take a chance on the well the way it was. We believe that on each of these two grounds an issue of fact was raised by the evidence and should have been submitted in proper instructions to the jury. Abbott Gin Co. v. M., K. & T. Ry. Co. of Texas, 57 Tex. Civ. App. 263, 122 S. W. 284 (error refused).

[21, 22] Defendant did not plead as a ground of contributory negligence Liner's action in placing his hand on the wire between the reel and the bumper squib while it was being run. Ordinarily defendant cannot show acts of contributory negligence not specifically pleaded by the answer. J. Rosenbaum Grain Co. v. Mitchell, 105 Tex. 160, 145 S. W. 1188. But plaintiff, in developing his case, brought out the fact that he placed his hand on the wire, which in our opinion developed evidence relating thereto sufficient to raise a question of fact, and same should have been submitted to the jury, though not pleaded. G., C. & S. F. Ry. Co. v. Allbright, 7 Tex. Civ. App. 21, 26 S. W. 250. We hold that reversible error was committed by the court in refusing to charge the jury upon these issues. Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S. W. 517.

We have considered all other assignments presented in appellant's brief, and they are overruled.

For the errors indicated, the judgment is reversed, and the cause remanded for another trial.

ROSENQUEST, Special Associate Justice, and LESLIE, J., concur.