FILE COPY



# THE SUPREME COURT OF TEXAS
Post Office Box 12248
Austin, Texas 78711

(512) 463-1312

August 29, 2014

Ms. Julie Wright
Flowers Davis PLLC
1021 ESE 323 Loop, Suite 200
Tyler, TX 75701-9607

Ms. Macey Reasoner Stokes
Baker Botts LLP
910 Louisiana Street, One Shell Plaza
Houston, TX 77002-4995

Mr. Darrin M. Walker
Law Office of Darrin Walker
6134 Riverchase Glen Drive
Kingwood, TX 77345

RE:     Case Number:  13-0234
        Court of Appeals Number:  12-11-00303-CV
        Trial Court Number:  07CV29,883

Style:  GILBERT WHEELER, INC.
        v.
        ENBRIDGE PIPELINES (EAST TEXAS), L.P.



FILED IN COURT OF APPEALS
12th Court of Appeals District

SEP - 1 2014

TYLER TEXAS
CATHY S. LUSK, CLERK

Dear Counsel:

Today the Supreme Court of Texas issued an opinion and judgment in the above-referenced cause. You may obtain a copy of the opinion and judgment through Case Search on our Court's webpage at: http://www.supreme.courts.state.tx.us/. On the Case Search page simply enter the case number and push the Search button to find the docket page for your case.

Sincerely,

Blake A. Hawthorne

Blake A. Hawthorne, Clerk
by Claudia Jenks, Chief Deputy Clerk

cc:   Ms. Lori Oliver
      Ms. Cathy S. Lusk

# IN THE SUPREME COURT OF TEXAS

No. 13-0234

GILBERT WHEELER, INC., PETITIONER,

v.

ENBRIDGE PIPELINES (EAST TEXAS), L.P., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

**Argued February 27, 2014**

JUSTICE LEHRMANN delivered the opinion of the Court.

This case presents various issues regarding the proper manner of compensating a landowner for the destruction of trees on his property. As a general rule, when an injury to real property is temporary, the owner is entitled to damages commensurate with the cost of restoring his property, but when an injury to the same property is permanent, the owner is entitled to damages commensurate with the loss in the fair market value to the property as a whole. In today's case, we consider whether this general rule applies when the wrongful conduct causing the injury stems from breach of contract rather than tort. Concluding that it does, we also review a common law exception to this general rule, which under certain circumstances entitles the landowner to damages in keeping with the intrinsic value of the trees that were destroyed. Because we conclude that the exception

properly applies in this case, and hold that any error in the jury charge related to such damages was harmless, we reverse the judgment of the court of appeals and remand the case to that court to address the remaining issues.

## I. Facts

The Wheeler family, by way of closely held corporation Gilbert Wheeler, Inc. (Wheeler), owns a 153-acre tract of land in Shelby County called "the Mountain." The property, which the Wheelers use as a family retreat, is heavily wooded and transected by a natural stream. When Enbridge Pipelines, L.P. determined that it needed to construct a pipeline across the property, it engaged INA Field Services to approach Wheeler about obtaining an easement. Wheeler agreed to grant Enbridge a right of way, but insisted that Enbridge install the pipeline by boring underground in order to preserve the trees on the property. Wheeler agreed to a contract that reflected this stipulation in explicit terms. Because this was an unusual provision, Enbridge was required to specifically approve the contract.

Soon after the parties executed the agreement, Enbridge hired a construction company to build the pipeline, but failed to inform the contractors about the provision requiring them to use the boring method to install the pipeline. As a result, in clearing the right of way the construction company cut down several hundred feet of trees and bulldozed the ground. In the process, the workers also channelized the stream that once meandered through the woods.

Wheeler sued Enbridge for breach of contract and trespass. The suit proceeded to a jury trial, and the court charged the jury on both claims. Enbridge objected to the trespass submission, arguing that Wheeler's claims sounded only in contract. Enbridge also requested a question concerning

2

whether the damage to the Mountain was temporary or permanent, contending that the question was a necessary predicate to determine whether the jury should award damages commensurate with the cost to restore the trees and stream or damages commensurate with the loss in the Mountain's fair market value. Wheeler contended that the distinction was irrelevant. Ultimately, the trial court submitted the charge without the question, and the jury found Enbridge liable for the damage to Wheeler's property on both trespass and breach-of-contract theories. In conjunction with the breach-of-contract claim, the jury awarded $300,000 to compensate Wheeler for the reasonable cost to restore the property. In conjunction with the trespass claim, the jury found no loss in the Mountain's fair market value and awarded Wheeler $288,000 in damages for the intrinsic value of the trees Enbridge destroyed. Wheeler elected to recover the damages awarded for breach of contract.

Enbridge appealed, arguing that the trial court erred in failing to submit the predicate question of whether the injury to the Mountain was temporary or permanent. Enbridge also contended that the injury was permanent as a matter of law, that cost-to-restore damages were therefore improperly awarded, and that Wheeler could not recover damages for the intrinsic value of the trees because that measure of damages was unavailable and not properly submitted to the jury in any event. Wheeler countered that the temporary-versus-permanent distinction did not apply because its case sounded in contract. Wheeler argued in the alternative that it could recover for the intrinsic value of the trees destroyed without respect to the temporary-versus-permanent distinction. The court of appeals agreed with Enbridge and held that, because Wheeler had failed to secure a finding as to whether the injury to the property was temporary or permanent, Wheeler had waived

its entitlement to a damage award. For that reason, the court of appeals rendered a take-nothing judgment in Enbridge's favor. Wheeler petitioned this Court for review.

## II. Analysis

Wheeler's petition raises broad concerns about the boundaries of the temporary-versus-permanent distinction and its application to the calculation of damages for injury to real property. In order to resolve the confusion surrounding this distinction, we take this opportunity to clarify its contours.

### A. Temporary-Versus-Permanent Injury to Real Property

Applying the distinction between temporary and permanent injury to real property has proven a vexing task for litigants and courts alike. After all, injury to real property often appears permanent in the sense that the exact real estate in question—a demolished house or destroyed tree—no longer exists. However, as discussed below, the law recognizes that such items frequently can be replaced in an adequate manner, rendering the landowner suitably compensated. To further complicate matters, Texas courts have attempted to categorize various aspects of a legal claim, including a party's conduct, an event or occurrence, a condition, an injury or harm, and the damages resulting from an injury or harm, as either temporary or permanent.

Further muddling things are the multiple purposes served by characterizing an injury to real property as temporary or permanent. The distinction guides courts in determining: "(1) whether damages are available for future or only past injuries; (2) whether one or a series of suits is required; and (3) whether claims accrue (and thus limitations begins) with the first or each subsequent injury." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 275 (Tex. 2004). The present case

4

illustrates a fourth application of the distinction: it guides the proper measure of damages for injury to real property.[1] To that end, we have applied the distinction in evaluating real-property damages across many different theories of liability. *See, e.g., Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 921 (Tex. 2013) (trespass); *Natural Gas Pipeline Co. v. Justiss*, 397 S.W.3d 150, 152 (Tex. 2012) (nuisance); *State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 172 (Tex. 2009) (eminent domain); *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 235 (Tex. 2004) (negligence).

In today's case, we focus on the significance of classifying injury to real property as temporary or permanent in the context of properly compensating the injured landowner. Our analysis takes into consideration the fact that the property in question was injured due to a breach of contract, as well as the fact that the injury involves loss of trees.

## B. Application of Distinction to the Measure of Damages for Injury to Real Property

As early as 1889, we stated that "[i]f land is temporarily but not permanently injured by the negligence or wrongful act of another, the owner would be entitled to recover the amount necessary to repair the injury, and put the land in the condition it was at the time immediately preceding the injury, with interest thereon to the time of the trial." *Trinity & S. Ry. Co. v. Schofield*, 10 S.W. 575, 576–77 (Tex. 1889). The companion rule, of equally venerable provenance, states that "the true measure of damages in case of permanent injury to the soil is the difference between the value of the

---

[1] We specifically recalled this "different purpose" for the temporary-versus-permanent distinction in *Schneider*. 147 S.W.3d at 270 n.12. We note that these purposes are not exclusive. We have held, for example, that a landowner may receive injunctive relief to prevent certain future trespasses if the trespass is "continuing." *See, e.g., R.R. Comm'n of Tex. v. Manziel*, 361 S.W.2d 560, 567 n.2 (Tex. 1962).

5

land immediately before the injury and its value immediately after." *Fort Worth & D. C. Ry. Co. v. Hogsett*, 4 S.W. 365, 366 (Tex. 1887). These rules are premised on the notion that the ordinary measure of damages is the cost to restore the property. When restoration is not possible, however, we award damages equal to the loss in fair market value of the property as a whole.

### 1. Application of Distinction to the Breach-of-Contract Claim

Wheeler argues that, with respect to calculating damages for injury to real property, the temporary-versus-permanent distinction has no place when those damages stem from breach of contract rather than tort. Wheeler notes that contract damages serve to give a plaintiff the benefit of his bargain, i.e., to place the plaintiff in the position he would have occupied if the contract had been performed. Wheeler contends that restoration costs will give it the benefit of its bargain under the right-of-way agreement and thus are the proper measure of damages regardless of whether the injury to the Mountain is characterized as temporary or permanent.

We have never directly addressed this issue, and the courts of appeals are not in agreement. Some have held that calculating damages for injury to real property requires application of "general principles" across causes of action, whether sounding in contract or tort. *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 32 n.4 (Tex. App.—Houston [14th Dist.] 2006, pet. denied); *see also Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 545–46 (Tex. App.—El Paso 2001, no pet.) (holding that cost to restore was the appropriate measure of damages for temporary injury to real property caused by breach of a lease agreement). Others have been more flexible in evaluating damage awards. *See, e.g., P. G. Lake, Inc. v. Sheffield*, 438 S.W.2d 952, 954–55 (Tex. Civ. App.—Tyler 1969, writ ref'd n.r.e.) (declining to apply the temporary-versus-permanent distinction

6

where an oil and gas lessee breached his contract to repair the leased premises); *see also B. A. Mortg. Co. v. McCullough*, 590 S.W.2d 955, 956–57 (Tex. Civ. App.—Fort Worth 1979, no writ) (affirming cost-to-restore damages in a case involving permanent injury to land because "the reasonableness of applying a given measure of damages in a given case unavoidably hinges on the peculiarities of the case" (citation and internal quotation marks omitted)).

We hold that application of the temporary-versus-permanent distinction in cases involving injury to real property is not limited to causes of action that sound in tort rather than contract. Of course, contracting parties are free to specify in an agreement how damages will be calculated in the event of a breach, but when they do not, both courts and parties benefit from the application of general principles with respect to calculating damages for such injury. In this case, we find persuasive our prior holding that, with respect to right-of-way agreements like the one at issue here, "the measure of damages for breach of an easement that restricted a right to cut trees would be the same as the measure for negligently cutting trees." *DeWitt Cnty. Electric Coop., Inc. v. Parks*, 1 S.W.3d 96, 105 (Tex. 1999). This stands to reason because the injury in question under either cause of action is the same. We see no reason to compensate a party differently because the wrongful conduct that caused the identical injury stems from breaching a contract rather than committing a tort. Further, the exceptions to the general rules in this area, discussed below, operate to ensure landowners are adequately compensated. Accordingly, we hold that the temporary-versus-permanent distinction underlies the determination of the proper measure of damages for both the trespass and breach-of-contract claims at issue.

## 2. Definitions of Temporary and Permanent Injury

Having clarified the significance of whether injury to real property is temporary or permanent with respect to measuring the resulting damages, we turn to how that determination is made. We have previously defined a permanent action or consequence in accordance with its ordinary meaning—that is, as a thing which will continue indefinitely, or at least for a very long time. *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 558 (Tex. 2004). But we have also recognized that the same action or consequence "need not be eternal" or "perpetual" to qualify as permanent. *Schneider*, 147 S.W.3d at 277. On the contrary, an action or consequence may qualify as permanent if it is ongoing, continually happening, or occurring repeatedly and predictably. *Gragg*, 151 S.W.3d at 558; *Schneider*, 147 S.W.3d at 272; *Atlas Chem. Indus., Inc. v. Anderson*, 524 S.W.2d 681, 684–85 (Tex. 1975); *Brazos River Auth. v. City of Graham*, 354 S.W.2d 99, 106 (Tex. 1961). Identifying the opposites of the same themes, we have defined as temporary those actions and consequences that do not last for long periods of time, are not ongoing, are not likely to occur again, occur only sporadically, or occur unpredictably. *Schneider*, 147 S.W.3d at 272; *Atlas*, 524 S.W.2d at 685; *Brazos River Auth.*, 354 S.W.2d at 108.

For the sake of clarity, we reformulate these definitions in the following way. An injury to real property is considered permanent if (a) it cannot be repaired, fixed, or restored, *or* (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated. Conversely, an injury to real property is considered temporary if (a) it can be repaired, fixed, or restored, *and* (b) any anticipated recurrence would be only occasional, irregular, intermittent, and

8

not reasonably predictable, such that future injury could not be estimated with reasonable certainty. These definitions apply to cases in which entry onto real property is physical (as in a trespass) and to cases in which entry onto real property is not physical (as with a nuisance). With these definitions in hand, we turn to whether the jury or the court is the proper entity to determine whether an injury to real property is temporary or permanent.

### 3. Whether Injury to Real Property Is Temporary or Permanent Is a Question of Law

We held long ago that "[w]hether the injury [to real property] amounts to total or only partial destruction of value, or whether it be permanent or temporary, as well as the extent of the injury and the resulting amount of damages, are all questions for the determination of the jury under proper instructions." *Trinity & S. Ry. Co. v. Schofield*, 10 S.W. 575, 577 (Tex. 1889). However, we have more recently clarified, in the context of a nuisance suit, that "[j]urors must still decide the frequency, extent, and duration of noxious conditions . . . [b]ut jurors cannot decide questions such as whether damages can be estimated with reasonable certainty, whether principles of res judicata allow one or a series of suits, or when limitations ought to accrue." *Schneider*, 147 S.W.3d at 281. Accordingly, we instructed that jurors should determine whether a nuisance works temporary or permanent injury only "to the extent there is a dispute regarding what interference has occurred or whether it is likely to continue." *Id.*

Because this instruction should apply with equal force in cases considering the appropriate measure of damages for injury to real property, we hold that whether an injury is temporary or permanent is a question of law for the court to decide. At the same time, we recognize that questions regarding the facts that underlie the temporary-versus-permanent distinction must be resolved by the

9

jury upon proper request. Said another way, when the facts are disputed and must be resolved to correctly evaluate the nature of the injury, the court, upon proper request, must present the issue to the jury, relying on the definitions we have provided in this opinion.

## 4. Exceptions to the General Rule as to Damages

As noted above, the general rule in cases involving injury to real property is that the proper measure of damages is the cost to restore or replace, plus loss of use for temporary injury, and loss in fair market value for permanent injury. However, we apply this rule with some flexibility, considering the circumstances of each case to ensure that an award of damages neither over- nor under-compensates a landowner for damage to his property. We maintain that the purpose of the law "in every case, is to compensate the owner for the injury received, and the measure of damages which will accomplish this in a given case ought to be adopted." *Pac. Express Co. v. Lasker Real–Estate Ass'n*, 16 S.W. 792, 793 (Tex. 1891). For that reason, Texas courts have appealed to a number of exceptions to the general rule when it would compensate a landowner unjustly. Two of those exceptions are at issue in this case.

### a. The Economic Feasibility Exception

In cases involving temporary injury, Texas courts have recognized the so-called economic feasibility exception to the general rule that the cost to restore is the proper measure of damages. This exception applies when the cost of required repairs or restoration exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible. In those circumstances a temporary injury is deemed permanent, and damages are awarded for loss in fair market value. *See N. Ridge Corp. v. Walraven*, 957 S.W.2d

10

116, 119 (Tex. App.—Eastland 1997, pet. denied); *see also Hubco*, 292 S.W.3d at 32; *Jim Walter Homes, Inc. v. Gonzalez*, 686 S.W.2d 715, 717 (Tex. App.—San Antonio 1985, writ dism'd). In *North Ridge*, a landowner sued for injury to his property caused by unrelated spills of saltwater and oil. 957 S.W.2d at 117. Although these injuries were capable of being remediated, and therefore temporary, the combined cost to complete the restoration would have "exceeded the maximum value of the entire 100–acre tract by more than six times." *Id.* at 119. As a result, the court of appeals concluded that the repairs were not economically feasible as a matter of law, and awarded damages in keeping with the loss in the property's fair market value. *Id.* at 119–20.

Although this Court has not expressly recognized the economic feasibility exception, we have applied it, or something very similar to it, when necessary to prevent a landowner from being overcompensated. Two cases with similar facts illustrate the application of this exception. In *Pacific Express*, a landowner sued to recover damages for the negligent destruction of his house, which by most accounts would be considered a temporary injury because the house could be rebuilt. 16 S.W. at 793. We held, however, that the house should be treated "as a part of the land," and the measure of damages should be "the difference between the value of the land immediately before and after a house on it is injured or destroyed." *Id.* at 794. We reached that result because declining local land values led us to conclude that to award the landowner the cost of restoring the home "would be to give to him more than would be just compensation." *Id.* at 793. By contrast, we reached the opposite result in *Coastal Transport Co. v. Crown Central Petroleum*, 136 S.W.3d 227, 235 (Tex. 2004). In that case, fire destroyed a landowner's facility. *Id.* at 229. The injury was found to be temporary, and the trial court awarded an amount commensurate with the cost of replacing the

11

facility, rather than the much larger sum the jury found constituted the property's lost market value. *Id.* at 230, 235. The landowner argued that the injury was permanent, as the facility had been totally destroyed, but we held that the landowner was "entitled to recover only the amount of money necessary to rebuild its facility and to compensate for its loss of use during the interim." *Id.* at 235. This, we explained, was a measure sufficient to place the landowner "in the same position [it] occupied prior to the injury." *Id.* (citations and internal quotation marks omitted).

Though we reached divergent results in these cases, in each instance we explained that our holding was necessary to ensure that the landowner was adequately, but not excessively, compensated. Consistent with these decisions, we confirm today our recognition of the economic feasibility exception to the general rule governing the measure of damages for temporary injury to real property.

### b. The Intrinsic Value of Trees Exception

In cases involving real property injured by the destruction of trees, even when the proper measure of damages is the loss in the fair market value of the property to which the trees were attached, and the value of the land has not declined, we have held that the injured party may nevertheless recover for the trees' intrinsic value. This exception was created to compensate landowners for the loss of the aesthetic and utilitarian value that trees confer on real property. In *Porras v. Craig*, a landowner sued his neighbor for cutting down trees on his property, some as large as four feet in diameter. 675 S.W.2d 503, 504 (Tex. 1984). The parties agreed that the damage to the land was permanent, and we noted that the usual measure of damages for permanent injury to real property is "the difference in the market value of the land immediately before and immediately after"

12

the injury occurs. *Id.* However, we observed that Texas courts of appeals had begun to apply "a conditional measure of damages, . . . contingent on a showing of no reduction in market value," which compensated landowners for the intrinsic value of the trees that were destroyed. *Id.* at 506. We recognized the exception and remanded the case for a new trial in the interest of justice. *Id.*

We recently revisited this exception in *Strickland v. Medlen.* 397 S.W.3d 184 (Tex. 2013). In that case, we considered whether pet owners could recover noneconomic damages for the negligent loss of their dog. *Id.* at 185. We concluded that they could not, as more than a century of case law has classified pets as personal property. *Id.* (citing *Heiligmann v. Rose*, 16 S.W. 931, 932 (Tex. 1891)). Ultimately, we held that the plaintiffs could recover only the objective, economic value of their pet. *Id.* at 198. In arriving at this conclusion, we distinguished *Porras*. We explained that *Porras* presented no obstacle to the result in *Strickland* because a tree's intrinsic value is not "rooted in an owner's subjective emotions," nor does it encompass the tree's "sentimental value" to its owner. *Id.* at 190. Rather, the intrinsic value of a tree lies in "its ornamental (aesthetic) value and its utility (shade) value." *Id.* (citing *Porras*, 675 S.W.2d at 506). We also do not rule out other elements of objective value to the extent an expert lays a proper predicate.

Applying *Strickland*, we confirm and clarify this exception to the general rule governing damages for permanent injury to real property. Specifically, we affirm that when a landowner can show that the destruction of trees on real property resulted in no diminishment of the property's fair market value, or in so little diminishment of that value that the loss is essentially nominal, the landowner may recover the intrinsic value of the trees lost; that is, the ornamental and utilitarian value of the trees. We recognize that in *Porras* we stated that the exception applies when there is

13

"no" diminution in market value, *Porras*, 675 S.W.2d at 506, but we decline to limit the exception so strictly. *See Moran Corp. v. Murray*, 381 S.W.2d 324, 328 (Tex. Civ. App.—Texarkana 1964, no writ) (holding that intrinsic value measure of damages is proper when the plaintiff shows "that destruction of the trees did not have a significant effect upon the market value of the land"). If we were to permit application of the exception when the property suffered no loss in fair market value but not permit application of the same exception when the property suffered what amounts to a nominal loss in value, we would controvert the purpose of a damage award, which is to adequately compensate the injured party. *See Pac. Express*, 16 S.W. at 793.

### III. Application

Having considered our case law concerning the temporary-versus-permanent distinction, we turn to the matter at hand. First, we consider whether Wheeler was required to submit a question asking the jury to characterize the injury to the Mountain as temporary or permanent. Second, we consider the propriety of the jury's award of cost-to-restore damages. Finally, we consider whether the jury question concerning the intrinsic value of the trees was properly submitted.

### A. Absence of a Temporary-Versus-Permanent Jury Question

The court of appeals ultimately held that Wheeler's claims failed because it had neglected to request, and in fact actively opposed, a jury question concerning whether the injury to the Mountain was temporary or permanent. The court of appeals stated that "whether injury to real property is permanent or temporary is a question of fact." 393 S.W.3d at 925. As a result, it reasoned that "before damages for injury to real property may be awarded, the plaintiff must first obtain a finding on whether the injury to the land was permanent or temporary." *Id.* The court relied

14

on Texas Rule of Civil Procedure 279 to hold that, because Wheeler had declined to include a necessary predicate question, and Enbridge had objected to that omission, Enbridge was entitled to rendition of judgment in its favor. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).[2] As explained above, the court of appeals' analysis is predicated on an erroneous premise—that the temporary-versus-permanent distinction is a question of fact. We therefore reject its conclusion.

Any dispute about the underlying facts of the case at bar has no bearing on the classification of the injury to the Mountain as temporary or permanent. Wheeler presented evidence that the cost to restore the Mountain to the condition it was in before Enbridge cleared the right of way was somewhere between $585,745 and $857,589. The jury ultimately found that the reasonable cost to restore the Mountain was $300,000. Although Enbridge contested the opinions of Wheeler's experts, at the very least they show that restoration was possible, rendering the injury temporary under the definitions supplied above. There was also competing expert testimony that the loss in the Mountain's fair market value was either $0 (according to Wheeler's expert) or $3,000 (according to Enbridge's expert). Under these circumstances, when restoration of the land is technically possible but exceeds the diminution in market value to such a disproportionately high degree that

---

[2] In *Payne*, we applied Rule 279 to hold that when an element of a party's claim is omitted from the jury charge, and the opposing party objects to the omission, a finding on the element may not be deemed in the prevailing party's favor. 838 S.W.2d at 241.

the repairs are no longer economically feasible,[3] the injury is deemed permanent. *See Pac. Express*, 16 S.W. at 793–94. Moreover, the parties now agree that the injury is a permanent one.

We hold that whether the injury to the Mountain was temporary or permanent is a question of law and that Wheeler therefore was not required to submit a jury question on that issue. Indeed, it would have been error for the trial court to include such a question in the charge. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010). Instead, applying the definitions supplied in this opinion, we hold that the injury to the Mountain is deemed permanent as a matter of law due to the parties' agreement and the application of the economic feasibility exception.

Because the injury is deemed permanent, however, the trial court improperly instructed the jury to calculate damages based on the cost to restore the property. In turn, the trial court's judgment may not be upheld based on the jury's calculation of such damages. Accordingly, we turn to the jury's award of intrinsic value damages.

## B. The Intrinsic Value of Trees Jury Question

The jury independently awarded Wheeler $288,000 in damages for the intrinsic value of the trees that were destroyed. Enbridge contends that Wheeler is barred from recovering such damages because (1) the loss of trees caused some diminution in the Mountain's fair market value, and (2) the

---

[3] We note that even the lower range of cost-to-restore damages presented by Wheeler's experts significantly exceeded the fair market value of the entire 153-acre property. The amount of cost-to-restore damages awarded by the jury was approximately 78% of the value of the entire property.

16

intrinsic value jury question was submitted in conjunction with the trespass cause of action, which was itself improperly submitted.[4]

In its first argument, Enbridge contends that Wheeler may not recover the intrinsic value of the trees that were destroyed because Wheeler did not adduce legally sufficient evidence that the value of the Mountain was not at all diminished by the destruction. In support of this argument, Enbridge cites the opinions of several courts of appeals. *See, e.g., Lamar Cnty. Electric Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App.—Texarkana 1989, no writ); *Garey Constr. Co. v. Thompson*, 697 S.W.2d 865, 867 (Tex. App.—Austin 1985, no writ). But, as we have already explained, a landowner may recover for the intrinsic value of the trees on his property so long as the diminution in the fair market value of the land is essentially nominal. To the extent these opinions hold otherwise, we expressly overrule them.

In this case, the record indicates that the fair market value of the Mountain as of the date of the injury was $383,000. As noted above, Wheeler's expert testified that the destruction of the trees had not diminished the value of the Mountain at all, while Enbridge's expert testified that the Mountain had been reduced in value by $3,000. Assuming that the latter figure is the correct one,[5] the fair market value of the Mountain was reduced by less than one percent. This negligible

---

[4] Enbridge also argues that Wheeler failed to show that the destroyed trees had no market value as timber separate and apart from the real property to which they were attached, rendering intrinsic value damages improper. *E.g., Lucas v. Morrison*, 286 S.W.2d 190, 191 (Tex. Civ. App.—San Antonio 1956, no writ). When we recognized intrinsic value damages in *Porras*, we did not require the plaintiff to make such a showing, which makes sense because that measure applies to trees that serve ornamental or shade purposes. 675 S.W.2d at 506.

[5] The jury agreed with Wheeler that there was no loss in fair market value, but Enbridge challenges the sufficiency of the evidence to support that finding. We need not decide that issue because the result is the same even if we assume there was a $3,000 loss in fair market value.

17

reduction in fair market value is essentially nominal and does not preclude application of the intrinsic value exception.

Enbridge also suggests an independent ground on which the jury's damage award must be invalidated. In the jury charge, the question that asked the jury to consider the intrinsic value of the trees was posed in connection with a liability question on Wheeler's trespass cause of action. Relying on *DeWitt County Electric Cooperative, Inc. v. Parks*, 1 S.W.3d 96 (Tex. 1999), Enbridge argues that Wheeler cannot recover on its trespass claim as a matter of law and that, as a result, the jury question related to the intrinsic value of the trees is infirm.

In *Parks*, certain landowners entered into a contract with an electrical services cooperative for an easement across the landowners' property. *Id.* at 99. The right-of-way agreement that created the easement gave the cooperative certain rights with regard to the trees that were located on or near the easement. *Id.* When the cooperative cut down several trees, the landowners sued, alleging breach of contract and negligence among other claims. *Id.* We considered whether the plaintiffs could maintain their negligence claim independently of their contract claim. *Id.* at 105. Ultimately, we held that when a contract between two parties "spells out the parties' respective rights about whether trees may be cut, the contract and not common-law negligence governs any dispute about whether trees could be cut or how trees were cut." *Id.* That is, we held that the landowners' claims sounded only in contract, not in negligence, and we affirmed the trial court's grant of directed verdict to the cooperative on the landowners' negligence claims. *Id.* However, in *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, we held that the existence of a contract did not prevent a plaintiff from bringing an additional claim for fraudulent inducement. 960 S.W.2d 41, 43

18

(Tex. 1998). Because in the instant suit Wheeler brought a claim for trespass—distinct from both the negligence claim in *Parks* and the fraudulent inducement claim in *Formosa Plastics*—it is not immediately clear whether the trial court erred in submitting Wheeler's claim to the jury.

However, we need not resolve that question to conclude that, even if the submission of the trespass cause of action was error, it was harmless. We have held that the submission of an improper jury question may be harmless when an appellate court determines that the verdict was based on a valid theory of liability. *Thota v. Young*, 366 S.W.3d 678, 693–94 (Tex. 2012). And, as we have already stated, the temporary-versus-permanent dichotomy and its concomitant rules and exceptions—including the intrinsic value exception—govern the proper measure of damages on Wheeler's breach-of-contract claim. *See Parks*, 1 S.W.3d at 105. Because breach of contract was a valid theory of liability on which Wheeler prevailed, it is of no moment that the intrinsic value of trees jury question was submitted in conjunction with a trespass cause of action.

## IV. Remaining Issues

Enbridge raised several issues in the court of appeals that were not reached because of that court's disposition of the case. Some of those issues were argued in the parties' briefing to this Court and have been discussed in this opinion. However, several were not, including various challenges to the trial court's admission of Wheeler's experts' testimony, exclusion of Enbridge's experts' testimony, and failure to submit a jury question on one of Enbridge's breach-of-contract defenses. As these issues were not briefed in this Court, we hereby remand the case to the court of appeals to address them.

19

## V. Conclusion

The court of appeals erred in rendering judgment for Enbridge based on the trial court's failure to submit a jury question on whether the injury to the Mountain was temporary or permanent. For the reasons discussed above, we reverse the court of appeals' judgment and remand the case to that court to address the remaining issues in a manner consistent with this opinion.

_____

Debra H. Lehrmann
Justice

**OPINION DELIVERED:** August 29, 2014

20

# IN THE SUPREME COURT OF TEXAS

No. 13-0234

GILBERT WHEELER, INC., PETITIONER,

v.

ENBRIDGE PIPELINES (EAST TEXAS), L.P., RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE TWELFTH DISTRICT OF TEXAS

FILED IN COURT OF APPEALS
12th Court of Appeals District

SEP - 1 2014

TYLER TEXAS
CATHY S. LUSK, CLERK

## JUDGMENT

THE SUPREME COURT OF TEXAS, having heard this cause on petition for review from the Court of Appeals for the Twelfth District, and having considered the appellate record, briefs, and counsel's argument, concludes that the court of appeals' judgment should be reversed.

IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that:

1) The court of appeals' judgment is reversed;

2) The cause is remanded to that court for further proceedings consistent with this Court's opinion; and

3) Gilbert Wheeler, Inc. shall recover, and Enbridge Pipelines (East Texas), L.P. shall pay, the costs incurred in this Court.

Copies of this Court's judgment and opinion are certified to the Court of Appeals for the Twelfth District and to the District Court of Shelby County, Texas, for observance.

Opinion of the Court delivered by Justice Lehrmann

August 29, 2014

\*\*\*\*\*\*\*\*\*