ACCEPTED
01-15-00108-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/17/2015 8:52:43 AM
CHRISTOPHER PRINE
CLERK

No. 01-15-00108-CV

_____

IN THE COURT OF APPEALS
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

9/17/2015 8:52:43 AM

CHRISTOPHER A. PRINE
Clerk

_____

Premium Valve Services, LLC
Appellant
v.
Comstock Oil & Gas, LP, Comstock Oil & Gas- Louisiana, LLC
and Certain Underwriters
Appellees

On Appeal from the 270th Judicial District Court
Harris County, Texas

Trial Court Cause No. 2009-65461

_____

# REPLY
# BRIEF OF APPELLANT
# PREMIUM VALVE SERVICES, LLC

_____

H. Dwayne Newton
State Bar of Texas No. 14977200
dnewton@newton-lawyers.com
Cynthia L. Jones
State Bar of Texas No. 00852600
cljones@newton-lawyers.com
NEWTON, JONES & SPAETH
3405 Marquart
Houston, TX  77027
Telephone:     713-493-7620
Facsimile:     713-493-7633

**ORAL ARGUMENT IS REQUESTED**

TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

INDEX OF AUTHORITIES........................................................................ ii

INTRODUCTION AND SUMMARY OF REPLY ................................................1

ARGUMENT AND AUTHORITIES..................................................................2

  Reply Issue No. 1 .................................................................................2

    Appellees admit there is no finding of permanent injury to the Collins #1 well.  Without such a finding, there is no basis for any award that includes costs of redrilling another well or for market value, and thus, the judgment entered by the trial court is erroneous.

  Reply Issue No. 2 .................................................................................6

    The cases cited by Appellees do not support the award of market value plus costs of remediation, but instead establish the error in the judgment below.

CONCLUSION AND PRAYER .........................................................................10

CERTIFICATE OF SERVICE .........................................................................12

CERTIFICATE OF COMPLIANCE.................................................................12

# INDEX OF AUTHORITIES

Cases

*Atex Pipe & Supply Inc.,*
  736 S.W. 2d 914 (Tex. App. – Tyler 1987, writ denied)............................................3

*Basin Oil Co. of Cal. v. Baash-Ross Tool Co.*,
  125 Cal. App. 2d 578 (1954) .................................................................................10

*Cressman Tubular v. Kurt Wiseman Oil*,
  322 S.W.3d 453 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) ....................3

*Dowell, Inc. v. Cichowski*,
  540 S.W.2d 342 (Tex. Civ. App. – San Antonio 1976, no writ) ...............................9

*Dresser Indus. v. Page Petroleum, Inc.,*
  853 S.W.2d 505 (Tex. 1993)........................................................................ 6, 7, 8

*Gilbert Wheeler, Inc. v. Enbridge Pipelines,*
  449 S.W.3d 474 (Tex. 2014)......................................................................... 2, 3, 4

*United States Torpedo Co. v. Liner*,
  300 S.W. 641 (Tex. Civ. App – Eastland 1927) (reversed on other grounds)..........9

_____

IN THE COURT OF APPEALS
FIRST DISTRICT OF TEXAS
HOUSTON, TEXAS

_____

Premium Valve Services, LLC
Appellant
v.
Comstock Oil & Gas, LP, Comstock Oil & Gas- Louisiana, LLC
and Certain Underwriters
Appellees

_____

# REPLY
# BRIEF OF APPELLANT
# PREMIUM VALVE SERVICES, LLC

_____

TO THE HONORABLE FIRST COURT OF APPEALS

**INTRODUCTION AND SUMMARY OF REPLY**

Appellants file this Reply to Appellees' Brief to address two important points made by Appellees that actually serve to highlight the problems with the judgment entered by the trial court in this case, and establish it cannot stand. First, Appellees acknowledge there has been no finding of permanent injury. This fact is fatal to Appellees' case, since every case cited in support of their damages is dependent on a finding of permanent damage. Second, based on the current, applicable case law cited by Appellees, the damages awarded by the trial court are erroneous.

## ARGUMENT AND AUTHORITIES

## REPLY ISSUE NO. 1

**Appellees admit there is no finding of permanent injury to the Collins #1 well. Without such a finding, there is no basis for any award that includes costs of redrilling another well or for market value, and thus, the judgment entered by the trial court is erroneous.**

Appellees admit neither the trial court nor the jury concluded the Collin's #1 well was permanently damaged as a result of the blowout. (Appellees' Brief at p. 42). Yet Appellees' Counter-Issues and all of their arguments throughout their brief simply presume the well was completely destroyed   The Texas Supreme Court has unequivocally held the measure of damages in any case involving damage to real property is dependent on whether the damage is permanent or temporary. Appellees dismiss this binding precedent, instead insisting the only question the jury did not answer was whether or not one particular well was in fact a replacement for the well claimed to be damaged. The admission by Appellees that there has been no finding of permanent injury amounts to an admission of reversible error warranting a new trial.

The proper measure of damages in cases involving damage to real property is either the cost to restore the property, or, if restoration is not possible, the loss in fair market value of the property. *Gilbert Wheeler, Inc. v. Enbridge Pipelines,* 449 S.W.3d 474 (Tex. 2014). In *Gilbert Wheeler, Inc.* the Court discussed at length the purpose and necessity of the requirement of distinguishing between permanent and

2

temporary damage in all real property cases. *Id*. 478-480. And as a matter of law, damage to an oil or gas well is damage to real property. *Cressman Tubular v. Kurt Wiseman Oil*, 322 S.W.3d 453 (Tex. App. – Houston [14th Dist.] 2010, pet. denied); *Atex Pipe & Supply Inc.,*736 S.W. 2d 914 (Tex. App. – Tyler 1987, writ denied).

Because *Gilbert Wheeler, Inc.* involved trees and not damage to an oil well, Appellees simply say the requirement distinguishing between permanent and temporary damages does not apply. (Appellees' Brief at 31) Appellees appear not to understand that *Gilbert Wheeler, Inc.* is completely consistent with the cases they have cited. The problem with Appellees' argument, is that in all of the cases they cite, such as *Atex*, *Dresser*, and *Dowell*, prior to entry of judgment there was either a finding the well in question was completely destroyed, or it was not an issue in dispute. (*See* Appellant's Brief at p. 12 – 13) But in this case, whether or not the well was beyond repair as a result of the blow-out, or whether it could in fact have been repaired, was a central disputed issue throughout the case, and extensive evidence on the issue was presented by both sides. A question therefore should have been submitted to the jury to enable the Court to make a finding as to whether or not the injury was permanent or temporary. The question Appellant offered would have accomplished that.

Had the jury been allowed to answer the question submitted by Appellants, there would be a basis for a conclusion one way or the other, as to whether the injury

to the well was permanent or temporary. If the jury believed the well was capable of being repaired as a result of the blowout, then the injury was temporary. If the jury believed the well was not capable of being repaired as a result of the blowout, then the injury was permanent. With these findings, the proper measure of damages could have been applied.

Appellees' suggestion that the question tendered by Appellants and rejected by the court was an inferential rebuttal issue that could only have been submitted as an instruction is simply false. The issue of whether an injury is temporary or permanent is a question of law, but any factual issues that have to be resolved must be submitted in the form of a question to the jury. *Gilbert Wheeler, Inc.,* at 449 S. W. 3d at 481. The fact issue as framed in the question tendered by Appellants was whether or not the well could have been repaired as a result of the blow-out, the answer to which would have provided the Court with a factual basis for finding a permanent or temporary injury.

Appellees' argument that Appellant did not properly object to the failure to submit the question on the proper basis is also false. In tendering the question to the Court, Appellant's counsel objected to the failure to submit, advising specifically the question was a "necessary foundational question for the Court to submit" and that without this finding, there would be an "absence of a necessary jury finding on a question of fact" as to whether or not there could be recovery for drilling another

4

well. Thus, the court was advised a fact question existed which had to be determined by the jury in order to support the damages requested.

Further, it was *Appellees'* burden of proof to establish that all of the damages sought were caused by the occurrence. Appellees admitted in the trial court below, and admit in their Brief here they failed to submit a necessary foundational question to support recovery of the damages awarded. Yet in their Brief, they suggest that the proper measure of damages is predicated solely on the fact that the jury found that Appellant was 100% negligent in causing the blowout, and has nothing to do with the permanency of the injury. (Appellants' Brief at 32) If that were true, then there would be no reason for Appellees to have ever concerned themselves at trial with putting on any proof at all regarding the reasonableness of its actions following the blowout, nor would they have needed to ask the trial court to make an omitted finding.

In their Brief, Appellees claim that in their motion for omitted finding in the trial court, they asked for a finding of whether the well could be reproduced. But this is not what was requested. Instead, they tried to sidestep the real issue of permanent v. temporary injury, and asked the court only to make a finding as to whether or not the Collins #2 well was a replacement for the Collins #1 well:

> . . . Plaintiffs in the above-entitled cause, move the Court to make an omitted finding of fact: namely, on whether the Collins #2 Well was a replacement well for the Collins #1 Well that the jury found was lost as a result of Defendant PVS' fault.

5

If the Court finds the Collins #2 WAS NOT a replacement well, then Plaintiffs move for a judgment in conformance with the jury's verdict and the trial court's finding. If the Court finds the Collins #2 well WAS a replacement well, then Plaintiffs move for a judgment notwithstanding the jury's verdict as to damage issue 4(c) (reasonable and necessary cost to re-drill and complete a replacement well) but based on the rest of jury's verdict.

(CR 531) Notably, Appellees' request for omitted finding *presumed* the jury found that the Collins #1 "was lost as a result of the blowout" – a finding that did not exist because no question was submitted to the jury that would have supported a finding of permanent injury. Here, Appellees specifically admit there was no finding of permanent injury made by the jury or by the court.

A fact issue existed as to whether or not the well was repairable. This fact issue was never submitted to the jury. Therefore, no finding of permanent injury to the well could have been properly made, resulting in the rendition of a judgment that is not supported and is inconsistent with the jury's answers to the charge.

## REPLY ISSUE NO. 2

**The cases cited by Appellees do not support the award of market value plus costs of remediation, but instead establish the error in the judgment below.**

Even if the trial court had properly made a finding of permanent injury, the damages it awarded are simply wrong, and do not comport with the current, applicable case law cited by Appellees. Appellees argue based on *Dresser v. Page Petroleum*, the judgment here is correct, since in *Dresser*, the court noted that costs of remediation were reasonable and necessary expenses in an attempt to save the

6

well. *Dresser Indus. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 511-512 (Tex. 1993); (Appellee's Brief at 47). But Appellees' argument is misleading, since in *Dresser,* the costs of remediation were NOT awarded.

In *Dresser,* Houston Fishing was found 40% negligent in causing damage to a well, which was ultimately plugged and abandoned, forcing the drilling of a new well. The jury found that the difference in the market value before and after the damage was $836,000.00. The jury also found the reasonable and necessary cost of the remedial work done in an attempt to save the well was $366,000.00, and the necessary cost of drilling and equipping a replacement well was $494,112.00. Because the market value ($836,000.00) was less than the cost of remediation plus the cost of drilling the new well ($366,000.00+494,112.00), the trial court entered judgment for $334,400.00, which was 40% of the market value. It did NOT add the remediation costs to the market value. On appeal, Houston Fishing argued that it should only have to pay 40% of $494,112.00, but the appeals court disagreed, holding that the trial court correctly considered the remediation costs as part of the costs of the replacement well:

> In this case, Page made what the jury considered a reasonable attempt to save the well with necessary expenditures of $366,000.00. Page is entitled to recover this reasonable and necessary expenditure as part of the cost of drilling the replacement well. *(citations omitted).* Thus, the total cost of drilling the replacement well, including the expenditures for the remedial work on the original well, was $860,112.00 ($494,112.00 plus $366,000.00). This cost of drilling the replacement well exceeds the cash fair market value of the original well prior to the

occurrence in question; therefore, the trial court correctly rendered judgment against Houston Fishing for $334,400.00.

Contrary to Appellees' suggestion then, using the exact approach taken by the Dresser court here would have resulted in a judgment of only $5,138,000. The jury found that the difference in market value before and after the occurrence was $7,562,000, the cost of remediation was $5,138,000 and the necessary cost of drilling and equipping a new well was $ 0. Since remediation costs plus redrilling costs as found by the jury ($5,138,000 + $ 0) were less than market value ($7,562,000), $5,138,000 would have been the appropriate amount of the judgment based on the jury's answers.

Even if the trial court believed Appellees' post-trial arguments, and found that the jury was wrong and should have awarded $5,396,697.12[1] for the cost of drilling a new well, the *Dresser* approach would still have resulted in a judgment of only $7,562,000, since the fair market value is less than the cost of remediation plus cost of drilling a new well. Nowhere in *Dresser* is it suggested that the cost of attempted remediation should be added to the fair market value in making an award.

---

[1] Appellees suggest that the jury must have awarded $0 as the reasonable and necessary costs to drill a well to replace the Collins #1 because they believed that the Collins #2 well would have been drilled anyway. But the question did not ask about the Collins #2, instead asking the jury to determine the amount necessary to redrill and complete an oil and gas well to replace the Collins #1 well. Based on the wording of the question, it is more plausible that the jury simply did not believe that drilling another well was made necessary by the occurrence.

Appellees also cite *United States Torpedo Co. v. Liner*, a 1927 case, for the proposition that expenses to attempt to save the well are recoverable in addition to market value. *United States Torpedo Co. v. Liner*, 300 S.W. 641 (Tex. Civ. App – Eastland 1927) (reversed on other grounds). While this language is found in dicta, the issue of whether such expenses were properly awarded was not challenged on appeal. The damage issue appealed there was whether or not the value of lost casing was properly deducted from the award. *Id*. at 646. It is also significant to note that in discussing damages awarded, the *Liner* court pointed out that "no contention was made by either party that the damage to the well could have been repaired." *Id.* Had there been an issue or reparability of the well then, the result would have been different.

Likewise, in a footnote, Appellees argue that in *Dowell, Inc. v. Cichowski*, plaintiff was "allowed" to recover $76,706.33, which included $13,706.33 for remedial repairs to the abandoned well, and $63,000 for the net cost of drilling and equipping a replacement well, even though the market value of the abandoned well was only $66,000. *Dowell, Inc. v. Cichowski*, 540 S.W.2d 342 (Tex. Civ. App. – San Antonio 1976, no writ) (Appellees' Brief at p. 52, fn. 134). Again, the judgment did not include an award for both market value and cost of remediation, and just as in *Liner*, the inclusion of the remedial repairs in the judgment was not challenged in the appeal.

Finally, Appellees argue that *Basin Oil Co. of Cal. v. Baash-Ross Tool Co.,* a 1954 California case not decided under Texas law, and with no precedential value here, supports their argument. *Basin Oil Co. of Cal. v. Baash-Ross Tool Co.*, 125 Cal. App. 2d 578 (1954). In *Basin*, the issue of whether or not any cost of remedial operations should have been included was not challenged. Rather, appellants in that case challenged only the amount of the damages included.[2]

Following current Texas case law and guiding precedent, the trial court's award of damages is in error. The judgment should be reversed, or at a minimum, reformed to correct the error.

## CONCLUSION AND PRAYER

The judgment in this case should be reversed, or alternatively at a minimum, reformed. By entering the judgement it did, the trial court disregarded Texas Supreme Court precedent by failing to submit a necessary fact issue to the jury and by ignoring the proper measure of damages.

The only way the judgment in this case can stand is if this Court 1) assumes that the damages to the well were permanent, despite an unresolved fact question the jury was never allowed to answer 2) ignores the jury's finding that $ 0 was the reasonable and necessary cost to "drill and complete an oil and gas well to replace

---

[2] "Baash-Ross's next point is that the court erred in applying a measure of damages based on the cost of remedial operations undertaken 18 months after the failure of the plugs instead of assessing damages on the basis of remedial operations promptly instituted." *Basin Oil,* 125 Cal. App. 2d 578 at 600.

the Collins #1 and 3) interprets the jury's finding that $5,138,000 was a reasonable amount to "repair and restore" the Collins #1 well, as really meaning that this was a reasonable amount to "attempt" to repair the well, but *not* to fully restore it, 4) disregards the very authority that Appellees rely on, which upholds an award of only market value, and not market value plus the cost of attempted remediation.

Appellant, Premium Valve Services, LLC respectfully requests this Court to reverse the judgment of the trial court and order a new trial of this matter. Alternatively, Appellant requests the Court reform the judgment of the trial court, and award actual damages of $5,138,000 plus interest and court costs.

Respectfully submitted,

*/s H. Dwayne Newton*

_____
H. Dwayne Newton
State Bar of Texas No. 14977200
dnewton@newton-lawyers.com
Cynthia L. Jones
State Bar of Texas No. 00852600
cljones@newton-lawyers.com
NEWTON, JONES & SPAETH
3405 Marquart
Houston, TX  77027
Telephone:     713-493-7620
Facsimile:     713-493-7633

11

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Reply Brief of Appellant was served on the following counsel for Appellees via electronic filing on September 17, 2015.

Julie M. Palmer
State Bar of Texas No. 08710800
jpalmer@grayreed.com
GRAY REED & MCGRAW, PC
1300 Post Oak Blvd., Suite 2000
Houston, TX 77056

*/s/ H. Dwayne Newton*
_____

**CERTIFICATE OF COMPLIANCE**

I have relied on the word count provided by my word processing program. There are 2705 words in the document.

*/s/ H. Dwayne Newton*
_____