**Opinion issued August 11, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00108-CV

————————————

**PREMIUM VALVE SERVICES, LLC, Appellant**

**V.**

**COMSTOCK OIL & GAS, LP, COMSTOCK OIL & GAS-LOUISIANA, LLC, AND CERTAIN UNDERWRITERS, Appellees**

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Case No. 2009-65461

## MEMORANDUM OPINION

Premium Valve Services, LLC appeals from a final judgment, rendered upon trial to the jury, in favor of appellees, Comstock Oil & Gas, LP, Comstock Oil & Gas-Louisiana, LLC, and Certain Underwriters. In two issues, PVS argues that the trial court erred by refusing to include a proposed question in the jury charge, and

by failing to apply the proper measure of damages. We reverse and remand for a new trial.

## Background

Appellees are the owners of the Collins #1 oil well located in Louisiana. PVS, which supplies rental equipment for the oil and gas industry, provided a frack stack[1] that was used on the Collins #1 well. During fracking operations on the Collins #1 well, the flow cross on the rented frack stack supplied by PVS failed, causing the frack stack to explode. The well was immediately shut down.

Appellees later sued PVS for negligence and products liability.[2] In their pleading, appellees alleged that the Collins #1 well was damaged as a result of the blowout caused by PVS and that the "physical damage to the well included, but was not limited to, the well-bore being filled with formation materials (that eventually caused the well to have to be abandoned and re-drilled despite [appellees'] attempts to save the well) and damage to other property at the well site." PVS generally denied appellees' claims and alleged, among other things, that most of the damage to the well was caused by appellees' negligent remedial efforts,

---

[1] A "frack stack" is a piece of well head equipment used during completion and well stimulation operations to pump fluids and proppants into the well and to flowback materials from the well. Frack stacks consist of numerous component parts, including a flow cross and various valves for controlling pressure.

[2] The trial court granted summary judgment in PVS's favor with regard to appellees' other causes of action.

not the blowout. Specifically, PVS argued that the well could have been repaired after the blowout, but that appellees' flawed remedial efforts caused a tool to be lodged in the well, and it was the inability to retrieve the tool that ultimately caused appellees to abandon the well.

At trial, appellees presented evidence that PVS negligently supplied them with a frack stack that contained a manufacturing defect, i.e., a pre-existing crack in the flow cross, and that the defective equipment was a producing cause of the blowout that caused permanent damage to the Collins #1 well. Witnesses testified that appellees attempted to restore and repair the Collins #1 well but those attempts proved unsuccessful. Appellees then abandoned the well and began drilling the Collins #2 well. The parties presented conflicting testimony regarding whether the Collins #2 well was a replacement well for the Collins #1 well.

The parties also presented conflicting testimony regarding whether the Collins #1 well was capable of being repaired after the blowout and the reasonableness of appellees' remedial efforts. In particular, PVS's expert testified that the blowout did not cause any downhole damage; it only damaged the well's surface casing which appellees were able to completely repair. The expert further testified that the well had been cleaned out all the way to the last frack plug, and had been returned to the condition it was prior to the blowout when a tool being used in the remediation became stuck in the hole. According to PVS's expert, the tool only became stuck in

3

the hole during the repair process because appellees did not follow their own remedial procedures and appellees were forced to abandon the well after they could not dislodge the tool. Appellees' expert, on the other hand, testified that the blowout caused downhole damage to the Collins #1 well which required appellees to attempt to clean out and restore the well, and that appellees' remedial efforts were both reasonable and necessary.

During the charge conference, PVS objected to the trial court's failure to submit to the jury the following question: "Was the Collins No. 1 well damaged to such an extent as a result of the occurrence that it could not be reasonably repaired?" The trial court overruled the objection and refused to include appellees' proposed question in the charge.

The jury found that PVS's negligence proximately caused the blowout and that the equipment PVS had provided to appellees contained a manufacturing defect that was a producing cause of the blowout.[3] In addition to these liability findings, the jury was also asked to determine what sum of money would fairly and reasonably compensate appellees for their damages that resulted from the blowout. The jury made the following three findings: (1) the difference in the market value of the Collins #1 well immediately before and immediately after the blowout was $7,562,000; (2) the reasonable and necessary cost to repair and restore the Collins

---

[3] PVS is not challenging the jury's liability findings on appeal.

#1 well was $5,138,000; and (3) the reasonable and necessary cost to re-drill and complete a well to replace the Collins #1 well was $0.

After the jury returned its verdict, appellees filed a Motion for Omitted Finding and for Entry of Judgment asking the court to make a finding as to whether the Collins #2 well was a replacement well for the Collins #1 well. The trial court granted the motion in its entirety and expressly found that the Collins #1 well "could not be reproduced." The trial court awarded appellees damages in the amount of $12,700,000,[4] plus pre-judgment interest, costs of court, and post-judgment interest.

## Jury Charge

On appeal, PVS argues that damage to an oil and gas well is damage to real property, and therefore, the proper measure of damages in this case is dependent upon whether the damage to the Collins #1 well was temporary or permanent. *See Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 481–82 (Tex. 2014) (setting forth general measure of damages in injury to real property cases and discussing distinction between temporary and permanent damages to real property). According to PVS, the trial court erred by failing to submit a question to the jury regarding the repairability of the well because the jury's answer to that

---

[4]     The $12,700,000 award is the total value of the damages assessed by the jury: the difference in the market value of the Collins #1 well immediately before and immediately after the blowout ($7,562,000), plus the reasonable and necessary costs to repair and restore the well ($5,138,000).

question would have provided the court with a factual basis from which the court could have determined whether the injury to the well was temporary or permanent. *Id.* at 481 (holding that whether injury to real property is temporary or permanent is question of law for court and that disputed facts that underlie temporary-versus-permanent distinction must be resolved by factfinder).

## A.    Standard of Review

A properly requested jury question must be submitted if the question is on a controlling issue that is raised by the pleadings and supported by some evidence. TEX. R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). A trial court may refuse to submit a jury question only if no evidence exists to warrant its submission, i.e., less than a scintilla. *See Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). To rise above a scintilla, the evidence offered to prove a vital fact must do more than create a mere surmise or suspicion of its existence. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). The standard of review for an allegation of jury charge error is an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

Even if a trial court abused its discretion when it refused to submit a question to the jury, we cannot reverse the judgment on this basis unless this charge error was

harmful. TEX. R. APP. P. 44.1(a); *Wal–Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). Harm occurs when the error in the charge probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case to the court of appeals. TEX. R. APP. P. 44.1(a); *Johnson*, 106 S.W.3d at 723. Charge error "is generally considered harmful" and thus reversible "if it relates to a contested, critical issue." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009).

**B.     Applicable Law**

A claim for damage to a wellbore is a claim for damage to a real property interest. *See Cressman Tubular Prods. Corp. v. Kurt Wiseman Oil & Gas, Ltd.*, 322 S.W.3d 453, 462 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (holding damage to wellbore is damage to real estate improvement); *see generally Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 426 (Tex. 2008) ("oil and gas wells are improvements to real property").

In *Gilbert Wheeler, Inc.*, the Texas Supreme Court explained that a trial court must determine whether an injury to real property is temporary or permanent in order to establish the proper measure of damages in such cases. *Gilbert Wheeler, Inc.*, 449 S.W.3d at 478–80. Although the proper measure of damages for a temporary injury to real property is generally the cost to repair or restore the property to its pre-injury condition, the proper measure of damages for a permanent injury is the difference in

7

the property's fair market value before and after the injury. *Id.* at 478–79, 481. A temporary injury, however, will be deemed permanent if the cost to restore or repair the property "exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible." *Id.* at 481 (recognizing applicability of "economic feasibility exception," which limits owner to lesser amount of damages when necessary to avoid overcompensation).

Whether an injury to real property is temporary or permanent is a question of law for the court. *Id*. However, if there are disputed facts that underlie the temporary-versus-permanent distinction, such fact questions must be submitted to the factfinder upon proper request. *Id.* The Texas Supreme Court has defined "temporary" and "permanent" injuries to real property as follows:

> An injury to real property is considered permanent if (a) it cannot be repaired, fixed, or restored, *or* (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated. Conversely, an injury to real property is considered temporary if (a) it can be repaired, fixed, or restored, *and* (b) any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty.

*Id.* at 480 (emphasis in original). Thus, when the injury is alleged to have been caused by a solitary event that, by its nature, is not subject to recurrence or repetition,

8

an injury to real property is generally considered permanent if the property cannot be repaired, fixed, or restored. *See id.*

**C.      Analysis**

Appellees alleged that PVS negligently supplied them with a defective flow cross, the failure of which caused damage to the Collins #1 well, including the wellbore. Such an allegation constitutes a claim for damage to a real property interest. *See Cressman Tubular Prods.*, 322 S.W.3d at 462; *see generally Wagner & Brown, Ltd.*, 282 S.W.3d at 426.

At trial, the parties presented conflicting testimony with regard to whether the Collins #1 well was repairable after the blowout. Specifically, PVS's expert testified that the well, which did not incur any downhole damage, was repairable after the blowout, and that the well had been returned to the condition it was in prior to the blowout when a tool being used in the remediation effort became stuck in the hole. Appellees' expert, however, testified that the well could not be repaired due to the downhole damage caused by the blowout, despite appellees' reasonable and necessary remedial efforts.

During the charge conference, PVS objected to the trial court's failure to submit a jury question "on whether or not the well in question was damaged to such an extent that it could not be reasonably repaired" and argued that a question regarding the repairability of the well was "a necessary foundational question for the

Court to submit" with respect to the issue of damages "and as a result of failing to submit that issue, there will be the absence of a necessary jury finding on a question of fact." PVS also proposed the following jury question: "Was the Collins No. 1 well damaged to such an extent as a result of the occurrence that it could not be reasonably repaired?" The trial court overruled the objection and refused to include PVS's proposed question in the charge. PVS preserved this complaint for our review by objecting to the omission of a question on the well's repairability after the blowout and tendering a proposed question before the charge was read to the jury. *See* TEX. R. CIV. P. 272, 274, 278, 279.

The trial court abused its discretion when it refused to submit a question on repairability to the jury because the question was supported by the written pleadings and the parties presented more than a scintilla of evidence with respect to the repairability of the Collins #1 well after the blowout. *See* TEX. R. CIV. P. 278 (requiring submission of jury questions supported by written pleadings and evidence); *Union Pac. R.R. Co.*, 85 S.W.3d at 166 (same); *see also Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992) (per curiam) (trial court erred by denying properly requested question on viable affirmative defense that was timely raised by pleadings and evidence).

We cannot reverse on this basis, however, unless this charge error probably caused the rendition of an improper judgment or prevented PVS from properly

10

presenting its case on appeal. TEX. R. APP. P. 44.1(a); *Johnson*, 106 S.W.3d at 723. Not only was the repairability of the Collins #1 well a contested issue at trial, but the jury's answer to that question would have provided the court with a factual basis from which it could have determined whether the injury to the well was temporary or permanent. *Gilbert Wheeler, Inc.*, 449 S.W.3d at 481 (holding that whether injury to real property is temporary or permanent is question of law for court, but underlying factual disputes must be submitted to factfinder). The trial court's resolution of that legal question would have determined the proper measure of damages in this case. *Gilbert Wheeler, Inc.*, 449 S.W.3d at 481. Accordingly, we hold that the trial court's failure to submit a jury question on this critical issue was harmful because it deprived the trial court of a factual basis from which it could have determined the proper measure of damages in this case. *See generally Hawley*, 284 S.W.3d at 856 (stating that charge error "is generally considered harmful . . . if it relates to a contested, critical issue").

Both parties agree that there is an omitted jury finding but they disagree about what was omitted and who bore the burden of asking for it. The trial court's deemed finding, to the extent that it was an effort to remove the harm from the omission of the question regarding repairability, does not render the error harmless. This is because the trial court cannot deem an omitted jury finding over a party's request for submission of that issue to the jury. *See* TEX. R. CIV. P. 299 (allowing trial court

11

to deem findings only for "omitted, *unrequested* elements" that are supported by evidence) (emphasis added). And, the deemed finding does not address whether the well was repairable but rather presumed that it was.

We sustain PVS's first issue.[5]

## Conclusion

We reverse and remand for a new trial.


Russell Lloyd
Justice

Panel consists of Justices Bland, Brown, and Lloyd.

---

[5] In light of our disposition, we need not reach PVS's second issue.