**Opinion filed January 29, 2015**



## In The

# Eleventh Court of Appeals

_____

## No. 11-13-00002-CV

_____

### ESTANISLAO ORTEGA, Appellant

### V.

### DONALD GENE CHESHIER
### AND CHERYL DIANE CHESHIER, Appellees

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. CV07631**

### M E M O R A N D U M   O P I N I O N

This appeal arises out of a dispute between Estanislao Ortega and his neighbors, Donald Gene Cheshier and Cheryl Diane Cheshier, that occurred when Ortega trespassed onto the Cheshiers' land, took down the Cheshiers' fence, cut down more than two dozen of their large trees, disrupted the soil and terrain on their land, and also left large tree stumps and wood piles on the property. The

Cheshiers sued Ortega for trespass and sought damages for the destruction of their trees and the conversion of their timber. The trial court, after a bench trial, awarded $45,000 in damages to the Cheshiers. Ortega asserts three issues on appeal. We affirm.

## I. *Background Facts*

The Cheshiers paid approximately $70,000 for approximately 36.78 acres of land in Erath County, and their property shared a boundary with Ortega's property. Ortega directed workers to cut down trees on Ortega's side of the property line, tear down his existing fence that was not on the boundary line, and build a new fence on the boundary line so that Ortega could keep cattle on his land. Ortega's workers cut down the trees on Ortega's side of the fence and tore down his existing fence, but they also tore down the Cheshiers' fence and proceeded to cut down approximately twenty-one to thirty large trees on the Cheshiers' property and four or five additional trees on the boundary line. Ortega did not have the Cheshiers' permission to tear down their fence or cut down their trees. The damaged area measured approximately 16 feet wide by 800 feet long. Ortega conceded that his workers had trespassed on the Cheshiers' property and had caused the damage to their property.

Brad Greenway, who lived on the Cheshiers' property, saw Ortega's workers and stopped them before they removed the stumps and leveled the ground. Greenway notified the parties of what Ortega's workers had done. Ortega admitted that his workers had trespassed and cut down the wrong trees. This suit followed. The parties stipulated that the "total appraised value" of the Cheshiers' property remained unchanged after the action of Ortega and his workers.

## II. *Issues Presented*

Ortega asserts three issues on appeal. In his first issue, Ortega claims that the trial court improperly used "damages to trees" as the measure of damages

2

instead of "damage to the land occasioned by the loss of the intrinsic value of trees removed." Ortega challenges, in his second and third issues, the legal and factual sufficiency of the evidence. Ortega concedes in his brief that the Cheshiers suffered damages, but he contends that no evidence or insufficient evidence was adduced to support the damages awarded by the trial court. Ortega also asserts three sub-issues in his third issue, namely that the trial court erred by (1) considering Greenway's opinion of the intrinsic value of the destroyed trees, (2) failing to apportion the total damage award among the components of the award, and (3) not considering the Cheshiers' failure to mitigate damages.

## III. *Standards of Review*

We review a legal sufficiency challenge to the evidence in a light that tends to support the disputed finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001). We "assess all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in favor of the judgment." *City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 593 (Tex. App.—Austin 2002, pet. dism'd) (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). A no-evidence challenge fails if more than a scintilla of evidence supports the challenged finding. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999).

We review a factual sufficiency challenge by examining all of the evidence in the record, both for and against the lower court's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). We must consider and weigh all such evidence in a neutral light. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). But "[factfinders] are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). We review a challenge of excessive damages under the same factual

sufficiency standard. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998).

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). We do not reverse a trial court's abuse of discretion in the absence of harm. *See Lone Star Gas Co. v. Lemond*, 897 S.W.2d 755, 756 (Tex. 1995). Harm occurs if the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1(a); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003). We review the entire record to determine whether an error has resulted in harm. *Interstate Northborough P'ship*, 66 S.W.3d at 220.

IV. *Analysis*

*A. Issue One: Measure of Damages for Temporary or Permanent Injury*

A landowner whose land is temporarily injured by the wrongful act of another is entitled to damages in the amount necessary to restore the property to its pre-injury condition. *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, No. 13-0234, 2014 WL 4252273, at *3 (Tex. Aug. 29, 2014) (citing *Trinity & S. Ry. Co. v. Schofield*, 10 S.W. 575, 576–77 (Tex. 1889)). If the injury is permanent, however, the landowner is entitled to the "difference between the value of the land immediately before the injury and its value immediately after," not the cost to restore the land. *Id.* at *3, *8 (quoting *Fort Worth & D. C. Ry. Co. v. Hogsett*, 4 S.W. 365, 366 (Tex. 1887)) (holding that trial court improperly instructed jury to calculate award for permanent damages based on cost to restore property). A "temporary injury is deemed permanent" if the cost to restore the property

4

"exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible." *Id.* at *5.

When the destruction of trees causes the injury but causes no diminution or "essentially nominal" diminution in the fair market value of the property, the injured party may recover the "intrinsic value" of the trees lost. *Id.* at *7. The trial court, in its final conclusion of law, included damages for "trespass" and "damage to trees." The evidence at trial demonstrated a permanent injury because there was no difference in the value of the Cheshiers' property before and after the trees were cut down. *See Gilbert Wheeler*, 2014 WL 4252273, at *5. In addition, because the loss of the large native oak and other trees did not result in a diminution of value to the property, the Cheshiers could only recover for the loss of the intrinsic value of their trees. *See id.*

While the trial court's use of the words "damage to trees" could have been more precise, those words in combination with a finding of fact that the injury was one that significantly affected the Cheshiers' view of their property and their privacy, but did not result in a change in the appraised value of the property, is consistent with a description of permanent injury for which the Cheshiers could recover for the loss of the intrinsic value of their trees. *See id.* Therefore, we overrule Ortega's first issue as it pertains to the nomenclature used by the trial court to describe the permanent injury that was sustained by the Cheshiers. We now turn to whether the evidence adduced at trial was legally and factually sufficient to support the judgment of the trial court.

*B. Issues 2 and 3: Legal and Factual Sufficiency of the Evidence*

The no-evidence legal sufficiency challenge fails if more than a scintilla of evidence supports the challenged finding. *See Canchola*, 121 S.W.3d at 739; *Gen. Motors*, 997 S.W.2d at 588. We may only sustain a legal sufficiency challenge when (1) the record discloses a complete absence of a vital fact, (2) the court is

5

barred by rules of law or evidence from giving weight to the sole evidence offered to prove a vital fact, (3) the sole evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

In a factual sufficiency challenge, we view and weigh all evidence in a neutral light, and if the evidence would enable reasonable minds to differ in their conclusions, we do not substitute our judgment, so long as the evidence falls within a zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822. In considering and weighing all of the evidence, we will only set aside the judgment if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

On the permanent injury damages issue, the Texas Supreme Court has explained that the intrinsic value of trees "is not rooted in an owner's subjective emotions" or measured by "sentimental considerations." *Strickland v. Medlen*, 397 S.W.3d 184, 190 (Tex. 2013). Rather, the intrinsic value of trees lies in "elements of objective value." *Gilbert Wheeler*, 2014 WL 4252273, at \*7 (citing *Strickland*, 397 S.W.3d at 190) (explaining that the ornamental and utilitarian value of trees, along with "other elements of objective value to the extent an expert lays a proper predicate," make up intrinsic value of trees); *see, e.g.*, *Lamar Cnty. Elec. Coop. Ass'n v. Bryant*, 770 S.W.2d 921, 923 (Tex. App.—Texarkana 1989, no writ) (holding that use for barrier and shade, and availability for sale in local nursery, supported finding of intrinsic value of trees), *overruled on other grounds by Gilbert Wheeler*, 2014 WL 4252273, at \*9; *Shearer's Inc. v. Lyall*, 717 S.W.2d 128, 130 (Tex. App.—Houston [14th Dist.] 1986, no writ) (holding that ornamental or shade use authorized award of damages for intrinsic value of trees);

6

*Garey Constr. Co. v. Thompson*, 697 S.W.2d 865, 867 (Tex. App.—Austin 1985, no writ) (holding that ornamental or aesthetic purpose supported award for intrinsic value of trees), *overruled on other grounds by Gilbert Wheeler*, 2014 WL 4252273, at *9.

The owner of the trees may testify as to their intrinsic value, but the factfinder determines the dollar amount to award. *See Porras v. Craig*, 675 S.W.2d 503, 506 (Tex. 1984) (remanding so that owner could establish diminution of market value of land or, if none, intrinsic value of trees); *Garey Constr.*, 697 S.W.2d at 867 (holding that evidence of dollar value "is not required in a case involving loss of intrinsic value of property"); *Lucas v. Morrison*, 286 S.W.2d 190, 191 (Tex. Civ. App.—San Antonio 1956, no writ) (explaining that the jury could "estimate" the intrinsic value of the tree "as well as" the landowner could and that landowner did not need to testify as to the intrinsic value "in dollars and cents"). The factfinder, however, may not "ignore the uncontroverted facts and arbitrarily fix an amount neither authorized nor supported by the evidence." *Boyer, Inc. v. Texan Land & Cattle Co.*, No. 14-00-00069-CV, 2001 WL 1590477, at *4 (Tex. App.—Houston [14th Dist.] Dec. 13, 2001, no pet.) (not designated for publication) (citing *Shearer's Inc.*, 717 S.W.2d at 130).

Ortega challenges the damages awarded by the trial court and asserts that no evidence or insufficient evidence existed to support the award. Donald Cheshier (Cheshier)[1] testified that he spoke to people in the community and gathered information from them on stump removal and levelling the terrain. Cheshier testified that the cost to remove the stumps and to level the terrain would total $6,500. Cheshier testified that, without the trees, he had no seclusion or privacy from his neighbors and that the beauty previously provided by the destroyed trees

---

[1]Donald Cheshier was present at trial, but he explained that his wife was absent because she was working onsite at a disaster relief area.

was "completely gone." Cheshier also testified that the trees had provided shade and a windbreak for his horses, beauty, and privacy. Ortega elicited testimony from Cheshier that the trees would block easterly cold winds but not northerly cold winds. Ortega also elicited testimony from Cheshier that there was nothing to indicate that the Cheshiers' horses had used the trees for shade.

Cheshier submitted photographs of the destroyed trees, which showed their trunk size; he also submitted an aerial photograph of the pre-injury tree line, which showed the trees' canopies. Cheshier testified that he asked Ortega to pay $53,000 for the damages that Ortega did to the property. Cheshier also thought, in part based on the arborist's report, that his lost and destroyed trees had an intrinsic value of $150,000.

Gregory Paul David, a certified arborist, testified to the value of the destroyed trees and said that he used two methodologies to determine a component of intrinsic value: "depreciated replacement cost" and "cost of cure." The depreciated-replacement-cost methodology was used to calculate the cost to "install or replace a tree, less depreciation on adjustments for . . . any undesirable specie characteristics for the original tree." The damages computed under this methodology totaled $185,954.62. The cost-of-cure methodology was used to calculate the cost "to go back in with smaller trees and reforest the area so that eventually the landowner would enjoy the benefits that they lost." The damages computed using this methodology totaled $50,438.50.

David testified that, based on the evidence he had, which included the aerial photograph, the canopies of the destroyed trees were "excellent" and "wonderful." He stated in his report that the destroyed trees provided "shade, natural beauty, wildlife habitat, and a visual screen and buffer zone between properties." He also wrote in his report that he inspected each destroyed tree, compared each to a "high-quality nursery-grown tree," and subsequently assigned each tree a condition

8

rating. He explained that "a 100-percent tree would be defect free and be similar to [a] high quality nursery tree." The health and condition of the thirty-three inspected trees ranged from ten to sixty percent with an average of about fifty-two percent. In addition, a tree that split the boundary line, half on the Cheshiers' property and half on Ortega's property, was assigned a fifty percent loss.

David testified that his calculations were "depreciated replacement cost" and "cost to cure," which he said were components of intrinsic value but also were costs to restore the property. Those estimates exceeded the diminution of the fair market value of the Cheshiers' land, which was zero dollars; therefore, the destruction of the Cheshiers' trees was a permanent injury. *See Gilbert Wheeler*, 2014 WL 4252273, at *5. And, with a permanent injury, the Cheshiers are entitled to recover the diminution in the value of their property, unless the diminution in the land's value was zero or nominal. *See id.* at *5, *8. Because that was the case here, the Cheshiers may recover, as an alternate measure of damages, the intrinsic value of their destroyed trees. *See id.* at *6–7.

The evidence of "objective value" included Cheshier's testimony of the privacy and seclusion that the trees provided, their beauty, and also the shade and windbreak they could provide for his horses, even if no evidence existed that the horses had used them for that purpose; the arborist's testimony that the canopy of the trees was "excellent" and "wonderful"; and the report that the condition ratings of the trees averaged about half of what one could find in a nursery. *See id.* at *7; *Lamar Cnty. Elec.*, 770 S.W.2d at 923; *Shearer's Inc.*, 717 S.W.2d at 130; *Garey Constr.*, 697 S.W.2d at 867.

The trial court, as factfinder, was responsible for awarding a dollar amount for the intrinsic value of the trees. *See Garey Constr.*, 697 S.W.2d at 867; *Lucas*, 286 S.W.2d at 191. We cannot say that the evidence presented by the Cheshiers, and the award determined by the trial court, was contrary to the overwhelming

9

weight of the evidence so as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We hold that Cheshier's testimony of the aesthetic and utilitarian uses of the trees, along with David's testimony of the canopies and report of the condition ratings, constituted sufficient evidence to support the trial court's award of damages. *See Gilbert Wheeler*, 2014 WL 4252273, at *6.

### C. Issue on Admissibility of evidence

Ortega complains that Greenway, not being the owner of the property, could not testify to the intrinsic value of the trees. When the Cheshiers asked Greenway his opinion of the value of the property, Ortega objected, and the trial court sustained that objection. Greenway was subsequently permitted, over Ortega's objections, to give his lay opinion that the intrinsic value of the destroyed trees was $50,000. Even if the trial court erroneously admitted Greenway's testimony, any error was harmless because the trial court could have reached its $45,000 judgment without Greenway's testimony since both Cheshier and David testified to the aesthetic and utilitarian purposes of the trees and David's report showed the condition ratings of the trees. *See* TEX. R. APP. P. 44.1(a). In addition, Cheshier gave his opinion about the intrinsic value of the trees, which included the benefits of privacy, seclusion, shade, and a windbreak. Although he thought the trees were "priceless," he offered an opinion that the intrinsic value of the trees was $150,000. Furthermore, he asked Ortega to pay $53,000 in damages because of Ortega's actions.

### D. Issue on Findings of Fact

In a nonjury trial, a trial court must make findings of fact that support ultimate issues. *See Tex. Health Facilities Comm'n v. Presbyterian Hosp. N.*, 690 S.W.2d 564, 565 (Tex. 1985). "Mere recitals of testimony or references to or summations of the evidence are improper." *Id.* (quoting *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 452 (Tex. 1984)). Thus, a

10

trial court is not required to detail its damages award. *See Associated Tel. Directory Publishers, Inc. v. Five D's Publ'g Co.*, 849 S.W.2d 894, 901 (Tex. App.—Austin 1993, no writ). Additionally, a party suffers no injury if the additional findings, if granted, would not produce a different judgment. *Williams v. State*, 283 S.W.2d 444, 447 (Tex. Civ. App.—Waco 1955, writ ref'd); *see Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 277 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (explaining that "if the requested findings will not result in a different judgment, those findings need not be made").

The trial court, in its original findings of fact and in response to Ortega's request for additional findings, did not apportion damages. The trial court was under no obligation to apportion its award into separate components if, in doing so, it would not produce a different judgment. *See Associated Tel. Directory*, 849 S.W.2d at 901. In this case, there was sufficient evidence to support an award for the intrinsic value of the trees of $45,000. Therefore, the refusal to apportion the award caused Ortega no injury. *See Williams*, 283 S.W.2d at 447.

*E. Issue on Mitigation of Damages*

Ortega complains that the trial court did not consider the Cheshiers' failure to mitigate damages in regard to the tree stump removal, leveling of the ground, and cleanup. Ortega has provided no authority for the Cheshiers' duty to mitigate damages in this situation, and as explained above, this injury alone would result in no award. *See Gilbert Wheeler*, 2014 WL 4252273, at *3–4, *6. The evidence of the intrinsic value of the trees supported the $45,000 award; therefore, the error, if any, did not cause the rendition of an improper judgment or prevent Ortega from properly presenting his case to us. *See* TEX. R. APP. P. 44.1(a).

V. *Conclusion*

After a review of the record, we hold that the trial court relied on sufficient evidence to support its judgment and that the damages it awarded were for

permanent injuries that could be recovered under the alternative measure of damages for the loss of "intrinsic value" to the Cheshiers' destroyed trees. *See City of Keller*, 168 S.W.3d at 810; *Cain*, 709 S.W.2d at 176. We additionally hold that any error in admitting Greenway's opinion or not considering the Cheshiers' failure to mitigate damages was harmless and that the trial court did not injure Ortega when it failed to apportion its award. *See* Tex. R. App. P. 44.1(a); *Williams*, 283 S.W.2d at 447. We overrule all of Ortega's issues, including the three sub-issues contained within his third and final issue.

VI. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE

January 29, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.